[Crim. No. 555.   Fourth Dist.   June 19, 1943.]

THE PEOPLE, Respondent, v. LAURA WALBECK, Appellant.

Charleville & Weddell and Harry H. Parsons for Appellant.

Robert W. Kenny, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

BARNARD, P. J.—A jury convicted the defendant of grand theft in the taking of certain household furniture be-

longing to one Charles Hewins. She has appealed from the judgment and from an order denying her motion for a new trial.

In 1933, Mr. Hewins located a mining claim in the mountains near San Bernardino. He built two cabins and a large house. He lived in the latter, having therein a large amount of furniture including some old family silver and dishes and a few pieces claimed to be antiques. In 1935, Mr. Walbeck came to work for Hewins and lived at his home for some eighteen months, during which time he did some work for Mr. Hewins and also worked elsewhere. He seems to have left the Hewins home in the summer of 1937, but apparently remained in the neighborhood. In May, 1939, he bought eighty acres of land which adjoined the Hewins claim. Sometime later, although the exact time does not appear, a survey was made and it was discovered that Mr. Hewins' house and two cabins were on the land which Walbeck had purchased. In June, 1939, the defendant, who had lived in the vicinity since 1937, married Walbeck. Thereafter, they lived in a house a few hundred yards from the Hewins home.

In the spring of 1940, Hewins and his wife left their house and after spending a few months in Santa Ana went to Arizona where they remained for some two years. They left their furniture in the house, leaving it in charge of a caretaker, Mr. Martin, who was allowed to live in one of the cabins. On August 1, 1941, Martin left and wrote to Hewins in Arizona informing him of that fact. Before leaving, he nailed the windows of the Hewins house shut and locked all the doors, the front door being locked with a heavy bolt on the inside and the back door with a padlock on the outside. He also locked the front gate with a chain and padlock. About a month later he drove by the property and observed that the chain on the front gate had been cut and that Mr. and Mrs. Walbeck were living in the house.

A few days after August 1, 1941, Mr. and Mrs. Walbeck moved into the Hewins house and took possession of the furniture therein. On August 14, 1941, the defendant secured a loan of $334.56 from a finance company, giving a mortgage on this furniture as partial security. On August 29, 1941, the defendant delivered four pieces of this furniture to a dealer in Ontario for the purpose of having it reupholstered. Later, upon her failure to pay his bill, he repossessed these articles.

In October, 1941, the defendant applied to the finance company for a larger loan on the furniture. While the finance company then appraised the furniture at about $2,000, for some reason a further loan was refused. In January, 1942, through an auctioneer in Los Angeles, the defendant sold several articles of this furniture, which were claimed to be antiques, for $147. In March, 1942, Mr. Walbeck went to a hospital and the defendant removed to a house in San Bernardino, taking with her a large part of the furniture from the Hewins house. A few days later, Mr. Walbeck gave the defendant a deed to the real property on which the Hewins house was situated and also a bill of sale covering the furniture in question. Mr. and Mrs. Hewins returned to their home in October, 1942, and finding practically all of their furniture gone, complained to the officers. A search warrant was issued and a large part of the furniture was found in the house in San Bernardino occupied by the defendant, and other portions were found in other places.

The main question here presented is whether the evidence is sufficient to support the implied finding of a felonious intent on the part of the defendant. It is conceded that the defendant took possession of this furniture and sold and disposed of portions thereof, and it was stipulated at the trial that its value was more than $200. However, it has been earnestly contended throughout that she honestly believed that she owned it. This contention is based upon the claim that Hewins had either conveyed this furniture to Mr. Walbeck or had pledged it to him as security for a debt, and that Mr. Walbeck had made an oral gift of the furniture to the defendant at the time she took possession thereof in August, 1941, which was followed by a bill of sale in March, 1942. Mr. Walbeck testified that in August, 1937, Mr. Hewins borrowed $65 from him "under the promise if he did not pay it back within three months, I could have everything there was in the house." At another time he testified that he understood this to be a pledge as security for the money thus loaned, that Mr. Hewins then owed him about $1,800 for work he had performed in the preceding eighteen months, and that he considered this pledge as also securing that debt. He admitted, however, that he had neither given any notice nor made any attempt to foreclose any pledge or lien, and that he had done nothing pursuant thereto until he and his wife

took possession of the furniture four years later and just after the caretaker left.

Hewins admitted having borrowed this $65 but testified that he paid it back in September, 1938. He denied that he owed Mr. Walbeck $1,800, or any other amount, as wages. An attorney who had represented Hewins testified that in the latter part of 1938, Mr. Walbeck had told him that there were no wages due to him from Hewins. This attorney also testified that on September 4, 1941, he wrote a letter to Mr. Walbeck telling him that he had no rights in the furniture. While Mr. Walbeck denied that he had ever received this letter the testimony of the defendant justifies the inference that he did and that she knew of it. In August, 1939, Mr. Walbeck brought a suit against Mr. Hewins for $1,900 covering money alleged to have been loaned to Hewins and wages alleged to be due from him for services from 1936 to 1938. In connection with an attachment which was then levied on certain real property Mr. Walbeck signed an affidavit in which he stated that he had no lien or other security for the indebtedness. This action was later dismissed by reason of the failure of the plaintiff to appear. The defendant testified that she consulted a lawyer, the time of which does not appear, and that, thereafter, she believed that she owned this furniture. She also admitted that she told the officer who came to her home with a search warrant that he would not find the property he was looking for because it was in some eastern state.

The defendant admitted that she took this furniture and treated it as her own, and sought to establish that she in good faith believed that it belonged to her husband and that he had a right to give it to her. Whether she had such an honest belief, or took the furniture with a felonious intent, was the principal issue in the case. The evidence relating to this issue was conflicting and naturally there was no direct evidence of a felonious intent. In such cases proof of the intent of the accused must, of necessity, rest upon inferences which may reasonably be drawn from other facts and from the actions of the party in question. It clearly appears that this defendant took a leading part in taking possession of this furniture and that she immediately and continuously exercised complete control over it. She mortgaged it and tried to increase the loan on it, she had portions of it repaired, she

sold some of it, and she moved a part of it and stored other portions. Whether she honestly believed she had a right to do this was a question of fact for the jury. Aside from the conflicting evidence in that connection, her husband's claim that four years before he had been given a right to or interest in the furniture as security for debts owed to him, with the agreement that the furniture was to become his if the debt was not paid within three months, is one that does not inspire confidence. This is especially true since he made no demand and no attempt to claim the furniture during the several years during which the Hewins continued to occupy the house in which it was situated, or while their caretaker was in charge. The possession of the furniture was taken after the caretaker had left, while Mr. and Mrs. Hewins were absent in Arizona, and without notice or any attempt to establish a right thereto. In addition to the suspicious nature of the general circumstances a number of inconsistencies, and even contradictions, appear in the testimony of the defendant and her husband which may well have caused the jury to disbelieve the story on which she relies. In our opinion, the evidence, with the reasonable inferences therefrom, supports the implied finding of the jury and the verdict, and the same may not be disturbed on appeal. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

It is contended that the trial judge was guilty of misconduct in revealing a prejudice against the defendant through certain statements made to counsel, and that other statements made by him clearly indicate that he entertained the erroneous theory that the only issue was as to whether or not the defendant had acquired a legal title to this furniture. Not only was no objection made to these statements at the time, but when they are considered with their context no impropriety or prejudice appears. Although the fact that this furniture was worth more than $200 was conceded, innumerable attempts were made to bring out testimony relating to the size, description, condition and value of the furniture, item by item, and to go into many other matters which were immaterial under the circumstances. The statements objected to were made in connection with such immaterial matters and in an effort to keep the testimony within reasonable bounds. Moreover, the court clearly stated that in view of the concessions made the main issue to be determined was

whether the defendant honestly believed she was entitled to take the property. The jury was properly instructed in that regard and, so far as we can see from the record, the case was thoroughly tried on that theory.

■ The contention that the district attorney was guilty of prejudicial misconduct justifying a reversal cannot be sustained. Two of the assignments made in this connection are not supported by the record. Another involves a misinterpretation of what was said in making an objection to a question asked of the defendant. The only one involving any possible impropriety was in asking the defendant on cross-examination whether she had not been intoxicated at the time the sheriff entered her home under a search warrant. Assuming that this was improper, although some justification appears in the evidence just preceding and immediately following this question, any possible error could not have affected the result. Moreover, no request was made to have the jury instructed to disregard it.

■ It is next contended that the court erred in giving a certain instruction to the effect that in order to acquire title to personal property under a claim of lien it is necessary to foreclose the lien by proper legal proceedings, and that if the jury should find that Mr. Walbeck's only claim of title was through the exercise of purported lien rights, and should further find that he did not foreclose such a lien through any legal proceedings, it should find that he had not acquired a legal title which he could transfer to the defendant. No argument is presented other than the statement that this instruction is erroneous "for the reasons heretofore in this brief set forth." This seems to refer to the argument that the case was tried upon an erroneous theory, to which we have referred. This instruction purported to cover but one phase of the matter under consideration. In other instructions, the jury was repeatedly told that it must acquit the defendant, regardless of who held the legal title to the furniture, if she took it in good faith and believing that she had a right to do so, even though her claim of title was untenable. The jury was also instructed that no one of the instructions contained all of the laws applicable to the issues involved, and that it should not single out any one or more of the instructions and consider it or them separate and apart from the other instructions. ■ It is further argued that

the court erred in refusing to give four instructions requested by the defendant bearing upon the intent of the defendant, and whether or not she had taken the furniture in good faith and believing she had a right to do so. Everything material and proper in these offered instructions was fully covered in instructions which were given. In at least four instructions, covering the subject fully and completely from various angles, the jury was told that it must acquit the defendant if it found that she took and retained possession of this property in good faith and under an honest belief that she had a lawful right to such possession.

A number of assignments of error are made to rulings in connection with the admission of evidence. It would serve no useful purpose to review these matters, some of which are immaterial in view of the concession that the property involved was worth more than $200, and others of which are either proper or of no importance. ■ In the one of these rulings which is most questionable the court refused to permit the husband of the defendant to testify concerning his having consulted a lawyer with reference to his right and title in and to this furniture. While we think it would have been better to have admitted this evidence, under the circumstances, the defendant herself was allowed to testify that she had consulted a lawyer and had been advised that she was the owner of this property and, at another time, that she had consulted another lawyer and thereafter believed that the property was hers. No reversible error appears in connection with any of these matters.

The judgment and order are affirmed.

Marks, J., and Griffin, J., concurred.