THE PEOPLE, Respondent, v. ALFRED LYLES,
Appellant.

Matthews & Hill and Edward I. Gritz for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information wherein defendant was accused of the crime of burglary (Pen. Code, § 459), in that he entered an occupied building with the intent to commit theft. Four prior felony convictions were alleged, including two for burglary, one for attempted burglary, and one for violation of the Deadly Weapons Act. Defendant pleaded not guilty and denied the prior convictions. Trial by jury was duly waived and it was stipulated that the People's case in chief be submitted on the transcript of the preliminary examination, subject to the right of either side to produce additional evidence at the trial. The court found defendant guilty of attempted burglary, second degree. No finding was made as to the prior

convictions. Motion for a new trial was denied and defendant was sentenced to state prison. From the judgment of conviction and the order denying his motion for a new trial, defendant prosecutes this appeal.

We regard the following as a fair epitome of the factual background surrounding this prosecution. Seraphan Garcia owned a hamburger stand located in Los Angeles County. At about 5 p. m. in the evening of February 2, 1957, Mr. Garcia closed his place of business. By means of a padlock he locked an outside door which opened into a restroom. Although the restroom, which had four walls and a roof, was attached to the rear of the hamburger stand, the only door to the restroom opened from the outside, and there was no door or other ordinary means of entrance from the restroom directly into the café.

At approximately 4:05 a. m. on the morning of February 3, 1957, as Officer James Bennett of the Los Angeles Police Department was driving past the aforesaid hamburger stand, he saw a person move from the corner of the building around to the rear. Officer Bennett stopped his car and went to investigate. As he went around the corner of the building, he observed a screwdriver wedged down to its handle in the top of a door leading into the building. When he arrived at the rear of the building, the officer noticed that the restroom door was ajar. The hasp was bent and the padlock was hanging open on the hasp. Officer Bennett saw defendant standing facing the door immediately inside the restroom. There was a light inside the restroom, but it was not turned on. The defendant was wearing gloves. Officer Bennett drew his revolver and ordered defendant to raise his hands and come out. The latter immediately dropped a folded paper bag. As the officer was preparing to place handcuffs on defendant, the latter quickly removed his gloves and threw them down.

After making the arrest, Officer Bennett returned to the place where the screwdriver was located in the door. He noted that the door and building seemed to have been recently painted, but the paint was chipped in six spots on the door and six spots on the building, and there were small chips of paint at the foot of the door. There was no rust over the marks where the paint was missing.

The paper bag which defendant dropped had a hole in the lower part thereof.

Sworn as a witness in his own behalf, defendant testified that at no time did he attempt to enter the hamburger stand.

With reference to his presence on the premises on the night in question, defendant testified "I was coming from Adams Street, sir. At that time of night I had gone over to see a lady friend of mine. I often come along there. I live downtown in a hotel and I often come along in the evening or late at night and so on. Then I do restaurant work myself sometimes in that vicinity along there and I come along there." That he required the use of a restroom. Knowing that this restroom was located behind the hamburger stand he decided to use it. That he had used this restroom on previous occasions. That he found it unlocked and proceeded to avail himself of its facilities. Defendant denied he was wearing gloves, "I had them in my hands because I had taken them out of my pocket to get the paper." In answer to a question, "Your clothes were all buttoned when the police came up?", defendant answered, "I was just buttoning my clothes, yes, buttoning my clothes." He denied any knowledge of the screwdriver which was wedged in the door. With regard to the paper which he had in his hand when apprehended, defendant testified: "I was using the paper. I rolled that paper myself to soften it." On cross-examination defendant admitted that he had been convicted of burglary in 1935, of violation of the Deadly Weapons Act in 1936, of burglary in 1940, and of attempted burglary in 1950. He did not recall any other felonies.

Appellant's sole contention on this appeal is that the evidence is insufficient to support the conviction.

It is conceded that the elements necessary for the crime of attempt are, as stated in *People* v. *Miller*, 2 Cal.2d 527, 530 [42 P.2d 308], as follows: "Where the crime remains unfinished and the defendant is charged with attempt, two important elements are essential: A specific intent to commit the crime (*People* v. *Mize*, 80 Cal. 41 [22 P. 80]), and a *direct* ineffectual act done towards its commission. (Citing cases.) Mere intention to commit a specified crime does not amount to an attempt. (*People* v. *Stites, supra* [75 Cal. 570 (17 P. 693)].) Preparation alone is not sufficient. 'Something more is required than mere menaces, preparation or planning.' (30 C.J. 13.) 'The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the *direct movement* towards the commission after the preparations are made. . . . Therefore, the act must reach far enough towards the accomplishment of the desired result to

amount to the commencement of the consummation.' (8 R.C.L., pp. 278, 279.)'' (Emphasis included.) (See also *People* v. *Siu,* 126 Cal.App.2d 41, 43 [271 P.2d 575].)

██ Therefore, in the case now engaging our attention the test to be applied is whether there is substantial evidence to support a finding that appellant committed some act which unequivocally manifested an existing intention to go forward to completion of the crime thus initiated. In other words, some appreciable fragment of the crime must have been committed (*People* v. *Miller, supra,* p. 530; *People* v. *Gallardo,* 41 Cal.2d 57, 66 [257 P.2d 29]). None of the cases relied upon by appellant militate against the foregoing applicable tests.

First giving attention to the element of intent, it is appellant's contention that ''. . . nothing was introduced to show an intent except the accused's own testimony previously quoted above, in which he said he had never tried to get in the restaurant. *His only intent was to use the restroom.''* However, appellant overlooks the fact that intent is rarely susceptible of direct proof and ordinarily must be inferred from a consideration of all the facts and circumstances shown in evidence. ██ And, it necessarily follows, that if the evidence is sufficient to justify a reasonable inference that the requisite intent existed, the finding of its presence in a particular case, may not be disturbed on appeal (*People* v. *Franklin,* 106 Cal.App.2d 528, 530 [235 P.2d 402]; *People* v. *Smith,* 84 Cal.App.2d 509, 511, 512 [190 P.2d 941]; *People* v. *Wagner,* 43 Cal.App. 248, 250 [184 P. 876]).

██ In the instant case there was evidence that about 4 o'clock in the morning, the police officer saw appellant move from the corner of a restaurant building, ''around to the back side.'' A screwdriver was found wedged in a door of the building; the lock on the adjoining restroom door was broken; and standing inside the door was appellant, wearing gloves. When the police officer approached him appellant dropped the paper bag he was carrying and subsequently dropped his gloves. We are satisfied that the court was justified, under the above narrated facts, in reasonably inferring therefrom the existence of the requisite intent required for conviction of attempted burglary.

██ As to the required overt act done toward the accomplishment of the intended crime, in addition to the foregoing facts, the court had before it evidence that ''the door and the building seem to be freshly painted or very recently

painted, and the paint was chipped in six spots on the building and six spots on the door, and there were small chips of white paint at the foot of the door, and the screwdriver was still in the door on one of the six marks." According to the police officer there did not "appear to be any rust over the marks where the paint was missing." Under all of the facts and circumstances present in this case, we are unable to say that as a matter of law, the conclusion arrived at by the duly constituted arbiter of the facts, that the screwdriver had been used by appellant in an attempt to force open the door of the building and that it was appellant who forced open the restroom door, was unreasonable and lacking in evidentiary support. Appellant's exculpatory explanation of his presence on the premises merely created a conflict in the evidence, and the trial judge was authorized, if he conscientiously felt warranted in so doing, after full and fair consideration thereof, to reject such explanation, and to accept the testimony of the police officer as to the immediate circumstances of appellant's apprehension, and to predicate reasonable inferences thereon (*People* v. *Aguirre,* 11 Cal.2d 248, 252 [79 P.2d 93] ; *People* v. *Toliver,* 90 Cal.App.2d 58, 61 [202 P.2d 301]). In determining appellant's credibility, the court was entitled to consider his admission of some four prior felony convictions (Code Civ. Proc., § 2051).

Appellant urges that the owner of the hamburger stand testified that the lock on the building had been tampered with on previous occasions and that there "were marks on all the doors . . . from previous occasions" and that "This arrest was at 4:00 o'clock in the morning; the owner locked up at 5:00 o'clock the previous evening. There is nothing to show but what a dozen other people might have tried to break in during the eleven-hour period. Would it not be sensible to charge the accused with the other attempts as testified by Garcia, the owner?" The answer to this contention is obvious. On the occasions of previous attempts to enter the building appellant was not found thereat under the circumstances present in the instant case.

As so often repeated, the function of an appellate tribunal begins and ends with a determination of whether the record on appeal contains evidence, contradicted or uncontradicted, which supports directly or upon reasonable inferences drawn therefrom, the conclusion of the trier of the facts. As was said by our Supreme Court in *People* v. *Newland,* 15 Cal.2d 678, 681, 682 [104 P.2d 778], in the perform-

ance of that function, " 'We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (Citing cases.)"

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Fourt, J., and Drapeau, J.,* concurred.

*Assigned by Chairman of Judicial Council.