[Crim. No. 7327. Second Dist., Div. Three. May 3, 1961.]

THE PEOPLE, Respondent, v. ANDREW EUGENE MORTON, Appellant.

Ernest M. Miller for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Edmond B. Mamer, Deputy Attorneys General, for Respondent.

FORD, J.—The appellant was charged with the crime of grand theft in violation of section 487, subdivision 1, of the Penal Code. In the information it was alleged that during the period of about October 1, 1959, to January 1, 1960, he, while an employee, servant and agent of "Aero Quip Mfg. Co.," feloniously took personal property of that company. At his trial, his right to trial by jury was waived and, by stipulation, the cause was submitted on the testimony contained in the transcript of the preliminary examination together with certain exhibits, with the right reserved to each side to offer additional evidence. The appellant was found guilty. The imposition of sentence was suspended and he was placed on probation for five years, one of the conditions thereof being that he spend the first 90 days of the probationary period in the county jail. The appeal is from the judgment, the order granting probation being deemed to be a final judgment for the purpose of appeal under the provisions of section 1237 of the Penal Code. The appellant's sole contention is that the evidence was insufficient to support a determination that theft had been committed by the appellant as charged in the information. No question is raised as to the admissibility of any evidence.

The rule which governs an appellate court in a review of the evidence has been stated many times. It is applicable whether the trier of fact in the court below was a jury or, as in the present case, a judge.     As stated in *People* v. *Merkouris,* 52 Cal.2d 672, at page 678 [344 P.2d 1] : "In a criminal prosecution the weight of the evidence is for the jury to determine, and if the circumstances reasonably justify a verdict of guilty by the jury, an opinion of the reviewing court that those circumstances might also be reasonably reconciled with the innocence of the defendant does not warrant a reversal of a verdict of guilty by the jury. Likewise, defendant's contention that the incriminating circumstantial evidence was insufficient to establish his guilt because such evidence might also be deemed compatible with innocence is not well taken." (See also *People* v. *Newland,* 15 Cal.2d 678, 681, 684 [104 P.2d 778].)     "It is not the function of a reviewing court, even in a case dependent wholly on circumstantial evidence, to reweigh that evidence nor to attempt to formulate a reasonable theory of innocence." (*People* v. *Miner*, 156 Cal.App.2d 360, at p. 362 [319 P.2d 385] ; see also *People* v. *Berti,* 178 Cal. App.2d 872, 873-874 [3 Cal.Rptr. 514].)     Accordingly, the appellate court must assume in favor of the determination

of the trier of fact the existence of every fact which such trier of fact could have reasonably deduced from the evidence, and then the appellate court must decide whether such facts are sufficient to support such determination. (*People* v. *Williams,* 164 Cal.App.2d 285, 287 [330 P.2d 942].)

Briefly stated, the evidence was that personal property belonging to his employer was found in a store which the appellant had rented; it was the appellant's position that he was keeping a part of the property there because his employer lacked adequate storage space and that, as to the remaining property, he was engaged in performing work for his employer with respect thereto under the name of North Hollywood Bindery. In the light of the applicable law, a summary will be set forth of the evidence which gave support to the trial court's finding of guilt. In addition, reference will be made to evidence bearing upon the appellant's explanation of his possession of his employer's property.

James Henry Nutt, controller of the Western Division of Aeroquip Corporation, the employer of the appellant, testified that the appellant had the responsibility of keeping the inventory of all the office supplies and stationery "at a level with which we could do business efficiently." The storage of surplus stationery supplies at Horton's stationery store had been authorized but permission for storage elsewhere had not been given. On February 2 or 3, 1960, Mr. Nutt went to a store building at 8903 Laurel Canyon Boulevard with Officer Rolens and there found office stationery and supplies which belonged to Aeroquip. Although he could not identify particular items, "95% of the items" which were depicted in pictures there taken were similar to items which the witness had seen at the stationery storage area on Aeroquip's premises. In December 1959, the witness and another person had put special identification marks on various items at Aeroquip and items so marked were found at the Laurel Canyon Boulevard premises. Ballpoint pens of the value of about $500 were missing from the Aeroquip premises when an inventory was taken on February 6, 7 and 8. Pens of the value of $126 were found at the Laurel Canyon Boulevard store and were of the kind that Aeroquip purchased from its supplier. There was stationery missing of a value of at least $1,000. The appellant did not have permission to have any of the items at the Laurel Canyon Boulevard premises. On cross-examination, Mr. Nutt testified that Aeroquip did send out printed forms in large quantity to be bound and that one of the firms by which such work was

done was the North Hollywood Bindery. He estimated that between 5 and 10 per cent of the "paper stock, printed forms that were on hand" at the Laurel Canyon Boulevard premises "represented printed forms that Aeroquip was to have bound." Supplies were sent to the North Hollywood Bindery for the purpose of having snap-out forms made with carbon and other paper. The appellant had commented to the witness that there was a need for more storage space on the Aeroquip premises. On redirect examination, the witness testified that the typewriter ribbons and index tabs which were found at the Laurel Canyon Boulevard store were not supplied by Aeroquip to firms doing work which Aeroquip sent to them. The typewriter ribbons there found were of a value of approximately $90. The appellant never advised the witness that he was the proprietor of the North Hollywood Bindery.

Walter Eugene Hansen, the owner of a printing company, testified that he did printing work for Aeroquip. In the early part of January the appellant asked the witness if he was interested in buying gum label paper from him. Hansen asked the appellant what the price would be; the appellant asked what would be a good deal; Hansen said that "half of wholesale" was a good deal; the appellant said that would be "okay" and a price of approximately $100 was reached for the amount to be delivered which was 10 reams. About the middle of January material was delivered in the witness' absence. The paper delivered was not exactly the same type of paper which he and the appellant had discussed but he did get 10 reams of gum label paper. On the label was a little red dot. On jobs the witness did for Aeroquip, the boxes of stock sent to him were marked with a little red dot. The appellant never asked him for any money for the gum label paper and he never paid him for it. It was stipulated that it would be deemed that Walter Knee had been sworn and had testified that on or about January 28, 1960, the appellant delivered the gum label paper to Mr. Hansen's place of business by means of an Aeroquip truck.

Carol Sue Thomas testified that she worked for the appellant in January and February 1960, at his business at 8903 Laurel Canyon Boulevard. She started to work on January 25. She was hired on the basis of a monthly salary of $225 but he told her something about being on a commission basis when he should open up the store and start to do business. Ernestine Lopez testified that she worked for the appellant in January 1960. As to what he told her about her duties, she stated: "He

just said I would be the—collating and padding and answering the phone, and when the store opened, I would be out in front selling, and that is all.''

Gerald Norman Horton, the owner of Horton's stationery store, testified that Mr. Nutt called him over to the Laurel Canyon Boulevard store and he there saw some items of the value of about $50 which he had sold to Aeroquip.

Detective David M. Rolens of the Burbank Police Department testified that on November 30, 1959, he talked to the appellant at Aeroquip concerning some missing items. The witness stated: ''The items were listed as ballpoint pens, quantity in the dozens; a Victor Visible File, a paper cutter, and approximately 5,000 sheets of white ditto marked bond paper reported missing from the stationery supplies.'' The appellant told the officer that the items were found to be missing over a period of time. He next saw the appellant on February 3, 1960, at the Aeroquip premises. He and Sergeant Steckbauer talked to the appellant. The witness testified: ''Sergeant Steckbauer asked the defendant if he had any equipment from Aeroquip in his possession, and the defendant stated he did not. The defendant was asked by Sergeant Steckbauer in my presence if he had ever stolen any equipment from Aeroquip, and the defendant stated he had not. The defendant was questioned . . . as to whether or not he had a place of business on Laurel Canyon and had any Aeroquip property at that location, and he stated he did not have a business, nor property at a location on Laurel Canyon.'' Then they drove to 8903 Laurel Canyon Boulevard. As they stopped in front of the building, the defendant said, ''I might as well stop lying. This is my business. I have a license for it as the North Hollywood Bindery.'' The appellant was asked to point out items which had been taken from Aeroquip and he pointed out items in the front portion of the store. A Victor visible card index was found there and the appellant said that it was the same one that had been previously reported as stolen in November 1959. The appellant was asked why such a report was made and he said that while he was making the report he thought he would put that in along with the other items reported as stolen at that time. The appellant also pointed out numerous items which belonged to him, including equipment used in his business at his bindery. He said that he was storing the property which belonged to Aeroquip and that he had authorized such storage himself. He further said that the majority of the paper items were there in connection with the business

that he was running and that he was performing operations with respect to such material for Aeroquip.

William A. Smith, plant engineer at Aeroquip, was called as a witness on behalf of the appellant. He testified that the appellant had told him that the storage space for office supplies at Aeroquip was inadequate and had requested his help in obtaining additional space. James J. Loggie, administrative engineer of the engineering department at Aeroquip, gave similar testimony. The only outside storage place being used of which the witness Loggie was aware was at the Horton store for which a monthly rental of $25 was paid. The appellant had authority to take Aeroquip vehicles for the purpose of transporting materials to places where work was to be done for Aeroquip. The witness never knew of the existence of the appellant's store. Prior to the time high officials of Aeroquip visited Aeroquip's local premises in the latter part of 1959, certain "housecleaning" was done. At that time the appellant was told to tidy up his space at Aeroquip. As to the police report of missing property in November 1959, the paper cutter reported as being missing was discovered in the plant about a week later.

Testifying on his own behalf, the appellant stated that he was first employed at Aeroquip as a printer on August 12, 1958. In referring to stock purchased by Aeroquip, he meant "paper, index, cardboards, gum stock, anything that we use within the printing line." He testified that he never stole anything from Aeroquip. He set up his own company, North Hollywood Bindery, and would send orders there for Aeroquip; he "kept a complete stock of the material there." In August or September he rented the Laurel Canyon Boulevard premises; prior to that he had done business from his home at 4939 Cartwright. Some of the stock in the Laurel Canyon Boulevard premises was from a printing business he had operated in 1957 and 1958. The storage space at Horton's store was about 6 feet by 18 feet in size and was not wholly protected from the rain. Because of the need for space, he moved equipment from that place to his own store "as temporary storage." When asked as to whether anyone told him to take any of the property to his store from the Horton store, he answered: "The authority had been left to my decision." He moved nothing to his store with the intent to acquire ownership of it himself. Some items in his store were being used for Aeroquip work which was being done by the North Hollywood Bindery. He was going to open up a printing place

but, as he expressed it, not quite to the extent of an ordinary stationery store. However, he found that that building was too small and he had decided to move to larger quarters. He received no payment for his storage space and did not intend to charge for it. Aeroquip never asked and he never told Aeroquip who owned the North Hollywood Bindery. With respect to the theft report in November 1959, he himself reported to Mr. Loggie of Aeroquip that several items were missing. Some time later he himself found the Victor visible index in a storage file drawer in his area at Aeroquip, but in the meantime he had set up another system of records for stock and, consequently, had no reason to use the Victor index; so he placed it in storage. His conversation with the police officers at the time they drove him to his store was with respect to the fact that it was now disclosed that he operated the bindery business, not with respect to any matter of theft. The appellant explained that the delivery of gum label stock to Mr. Hansen was for the purpose of having work done with respect to it for Aeroquip. It was not delivered pursuant to any discussion with Mr. Hansen about buying it. He testified: "I can't specifically remember telling him I was selling any paper." In later testimony he denied the conversation to which Mr. Hansen had testified. He never asked Hansen for any money and did not have the intent to do so. On cross-examination, he stated that he kept no records of any storage any place. His salary at Aeroquip was $345 a month at the beginning of his employment and $405 a month when he left. He started the bindery business in May or June 1959, at his home. His business with Aeroquip was in the average amount of about $300 to $400 a month. His total business was in an average amount of about $425 a month. The rent of the Laurel Canyon Boulevard premises was $65 per month. At those premises was a quantity of empty cartons with the Horton label thereon.

The testimony heretofore summarized was that set forth in the transcript of the preliminary examination. At the trial in the superior court, Mr. Nutt testified that items he saw at the Laurel Canyon Boulevard building in February bore marks. He said: "Well, the typewriter ribbons were marked with a short diagonal slash to the right of a V that happened to be a part of an M and V which is a trademark of the particular type of typewriter ribbon, and then there were five cans of waterless hand cleaner, and on the label of those

cans there were two small red dots placed with the use of a red ballpoint pen, and there were some index tabs put out by the Aico Company. . . . There were two small red dots placed on the ends of those boxes that contained those tabs.'' Such marks had been placed on the items at Mr. Nutt's direction on January 22, 1960.

Sergeant Robert J. Steckbauer of the Burbank Police Department also testified at the trial. He related his conversation with the appellant on the day of the arrest. Prior to arriving at the Laurel Canyon Boulevard premises, the appellant denied that he had any equipment or merchandise belonging to Aeroquip. But as they proceeded to enter the store, he said that he had items from Aeroquip inside.

At the trial, the appellant called Daniel Martin Sullivan as a witness. He had been employed at Aeroquip as general accounting manager until February 20, 1960. He testified as to the appellant's duties. No records were kept of items stored outside of Aeroquip. The authorized places of storage were Bekins and Horton's stationery store. The defense also called Officer Rolens for further cross-examination. He testified that on the day he went to the store with the appellant, the appellant gave him an inventory list. It was a partial inventory. The owner of the premises told the officer that the appellant was going to move to a new location.

▮ The core of the present matter is the intent with which the appellant removed goods from the premises of his employer and took them to his own storeroom. The appellant testified that he held the property in storage for the owner. However, the trier of fact determined that the personal property was taken from the possession of the owner, Aeroquip, without its consent and with intent to steal such property. If such determination was supported by substantial evidence, the trial court was warranted in finding the appellant guilty of grand theft. (See *People* v. *Corenevsky*, 124 Cal.App.2d 19, 23 [267 P.2d 1048].) ▮ In *People* v. *Lyles*, 156 Cal. App.2d 482, at page 486 [319 P.2d 745], the court stated: ''However, appellant overlooks the fact that intent is rarely susceptible of direct proof and ordinarily must be inferred from a consideration of all the facts and circumstances shown in evidence. ▮ And, it necessarily follows, that if the evidence is sufficient to justify a reasonable inference that the requisite intent existed, the finding of its presence in a particular case, may not be disturbed on appeal.'' ▮ The appellant's exculpatory explanation of his actions merely

created a conflict in the evidence. After a full and fair consideration of the evidence, the trial judge was warranted in rejecting such explanation if he conscientiously believed that the appellant was not telling the truth. (*People* v. *Rosborough,* 178 Cal.App.2d 156, 160 [2 Cal.Rptr. 669] ; *People* v. *Collins,* 172 Cal.App.2d 295, 300 [342 P.2d 370] ; *People* v. *Lyles, supra,* 156 Cal.App.2d 482, 487 ; see *People* v. *Berti, supra,* 178 Cal.App.2d 872, 874.)

·The evidence which the trial judge as the trier of fact accepted in preference to the explanation of the appellant was sufficient to support the inference of the existence of the intent which is essential in the crime with which appellant was charged. His employer did not authorize the storage of its property on the appellant's premises and was not informed by him that such had been done. An item of property which had been reported to the police as missing was later found on his premises. He entered into a transaction with Mr. Hansen for the sale of gum label paper and delivered Aeroquip's stock in fulfillment of his undertaking. He was deceitful when questioned by the officers before arriving at his premises on the day of his arrest. ''As to appellant's contention that no intent to steal was shown on his part, it is sufficient to say that proof of intent may consist of reasonable inferences drawn from affirmatively established facts.'' (*People* v. *Collins, supra,* 172 Cal.App.2d 295, at p. 299 ; see also *People* v. *Hansen,* 84 Cal. 291, 292 [24 P. 117] ; *People* v. *Walbeck,* 59 Cal.App.2d 277, 281 [138 P.2d 405].) There was substantial evidence to support the conclusion of the trier of fact and there is no basis upon which the judgment may be reversed.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.