[Crim. No. 7871. Second Dist., Div. Three. Mar. 23, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. DOROTHY GENTEMANN et al., Defendants and Respondents.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Taylor, Sherman & Heller, Paul S. Sherman, Buter & Taback and Irwin Buter for Defendants and Respondents.

FORD, J.—This is an appeal by the People from an order of the superior court granting a motion of the defendants to set aside the information. (Pen. Code, § 995.) In the first count defendants Gentemann and Rackemann were charged with the theft of $3,188 in money. In the second count the defendant Gentemann was accused of the theft of $800 in money.[1] The position of the defendants with respect to their motion was that they had been committed without reasonable or probable cause and that their rights had been violated in that a witness remained in the courtroom after their motion for the exclusion of all witnesses had been granted.

A résumé of the evidence received at the preliminary hearing will be stated. Theodore Carazza testified that he was a dealer in imported automobiles. The name of his company was Zacora, Incorporated, which did business under the name of Rivera Imported Cars. Defendant Dorothy Gentemann was employed by the witness as bookkeeper and office manager. In March 1960, when he was about to leave for a trip to Germany, he signed a number of checks in blank and left them with Mrs. Gentemann to be used to pay "accounts payable." He left for Europe on March 12, 1960. Sometime later he saw two of the checks. One was for the amount of $3,188,

---

[1] While defendant Rackemann is also named in the second count, on the hearing of the motion under section 995 of the Penal Code the deputy district attorney conceded that such inclusion was due to inadvertence.

bore the date of March 10, 1960, and was made payable to the Bank of America. The other check was dated March 15, 1960, was in the amount of $800, and was payable to Dorothy Gentemann. He gave no permission to Mrs. Gentemann or anyone else to use the checks for any purpose other than "company business." Both checks were charged to the bank account of the company. He did not know Mr. Rackemann.

On cross-examination, Mr. Carazza said that Mrs. Gentemann had worked overtime prior to March 11. He further testified that he did not have any conversation with Mrs. Gentemann with respect to the use of the blank checks after he signed them. He never talked to Mrs. Gentemann about any transaction involving Mr. Rackemann. He did not "know" Superfine Motors. When Mr. Carazza returned on May 8, he learned that his attorney had discharged Mrs. Gentemann. During his absence, two persons were authorized to sign checks for employees' wages, Mrs. Gentemann and Mr. Herman Cook; both signatures were required. If an employee was discharged, and he owed the employer no money, normally Mr. Carazza would give him severance pay; Mrs. Gentemann was aware of this procedure as far as the witness knew. Mr. Carazza's attention was directed to the fact that the check for $3,188 bore a bank stamp of March 11; he stated that he had not left on his trip at that time but had gone into his place of business on that date. The checks which he had signed were not to be used for the purchase of used cars.

Lydia McNally, a note teller at the Redondo Beach branch of the Bank of America, testified that on March 11 defendant Rackemann received from the bank a cashier's check in the sum of $3,188 in which the payee was designated as Superfine Car Company. Mr. Rackemann signed the application for the cashier's check and, after the words "purchased by," inserted "Zacora Inc." On cross-examination, the witness said that she asked Mr. Rackemann questions about Mr. Carazza's European trip.

Joseph Watt testified that he was the assistant operations officer for the Bank of America in Redondo Beach. The two checks which Mr. Carazzo had signed and the cashier's check for $3,188 were honored by the bank. The check for $800 was deposited to the account of the payee, Dorothy Gentemann, on March 23, 1960. The ledger sheet of her account disclosed that after that deposit various sums were withdrawn and that on April 18, 1960, the balance was $3.12.

Mac Kozak testified that he was secretary-treasurer of

Superfine Car Company of California. Counsel for the defendants stipulated, for the purpose of the preliminary hearing, that there was no objection to his testimony insofar as it was considered to be what he had ascertained from the examination of the records of his company. On or about March 11, 1960, the witness, as the representative of Superfine, was the legal owner of a ''1958 T-Bird, H-8 YH 126293.'' In exchange for the cashier's check for $3,188, a receipt was given showing that that amount of money had been received from William Reno Auto Sales.

William Reno testified that the name of his business was William Reno Auto Sales. On March 11, 1960, he was not in the process of purchasing a 1958 Thunderbird from Superfine Car Company but knew indirectly of such a transaction between Mr. Rackemann and Superfine.

Martin De Fazio, an assistant cashier at the Western and Santa Barbara Branch of the Bank of America, was called as a witness. He said that on March 16, 1960, Lorraine Jo Rackemann borrowed the principal sum of $2,200 from the bank and received a cashier's check for that amount. Her note was secured by a chattel mortgage of a 1958 ''T/bird,'' the engine number of which was stated to be ''H8YH126293.''

John P. Hutton testified that he was the assistant manager of the First Western Bank on Santa Barbara Avenue in Los Angeles. A check for $2,200 was presented at his bank on March 16, of which $200 was deposited to the account of Lorraine Jo Rackemann and Donald J. Rackemann and $2,000 was given to the depositor in cash.

David A. Lesser, when called as a witness, said in substance that on or about March 16, 1960, he received $1,744.72 in cash from Mr. Rackemann which sum represented delinquent amounts payable pursuant to a second trust deed on the Rackemann home.

Jess Klein, an investigator for the district attorney, testified that he arrested Mr. Rackemann at his home. Mrs. Rackemann and other persons were there on that occasion.

This court stated in *People* v. *Platt,* 124 Cal.App.2d 123 [268 P.2d 529], at pages 130-131: ''The evidence necessary to justify an order holding a defendant to answer to the superior court is not subject to the same test as that before a trial jury in a criminal action, and reasonable or probable cause may be found for holding to answer although the evidence does not establish the defendant's guilt beyond a reasonable doubt. All that is required is a reasonable prob-

ability of the defendant's guilt. (*Davis* v. *Superior Court,* 78 Cal.App.2d 25, 27 [177 P.2d 314].) 'Reasonable or probable cause,' required to uphold the commitment of a defendant (Pen. Code, § 995), exists if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged. (*People* v. *George,* 95 Cal. App.2d 425, 429 [213 P.2d 33] ; *People* v. *Thomas,* 90 Cal. App.2d 491, 494 [203 P.2d 567].)

 "On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. (*Weber* v. *Superior Court,* 35 Cal.2d 68, 69 [216 P.2d 871].) A court may not substitute its judgment as to the weight of the evidence for that of the magistrate. If there is some evidence to support the information, the courts will not inquire into its sufficiency. Under section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed. (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 55-57 [216 P.2d 859].)"

 With respect to the second count in which the defendant Gentemann was charged with the theft of $800, the evidence was not of such a nature that "the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated." While the blank check had been entrusted to Mrs. Gentemann for use only in the conduct of her employer's business, the record is devoid of evidence that she used the check for an improper purpose. No witness testified that her employer did not owe her the amount of the check under an obligation in the nature of an account payable. Mere conjecture that the check was not used for a proper business purpose cannot be substituted for evidence. (Cf. *Litt* v. *Superior Court,* 141 Cal.App.2d 70, 72-73 [296 P.2d 85].)

 With respect to the first count in which both Mrs. Gentemann and Mr. Rackemann were charged with the theft of $3,188, the evidence showed that that amount was obtained

from the bank account of Mrs. Gentemann's employer by means of a blank check which had been entrusted to her for use only in the course of her employer's business. But that she participated in any fraudulent appropriation of the property of her employer could only have been a matter of conjecture on the part of the magistrate. However, the evidence of the acts of the defendant Rackemann in the use of the check and its proceeds was sufficient to furnish the magistrate a sound basis for the conscientious entertainment of a reasonable suspicion that the crime of grand theft had been committed and that defendant Rackemann was guilty of it. With respect to the element of intent, as said in *People* v. *Proctor,* 169 Cal.App.2d 269 [337 P.2d 93], at page 279: "As to appellant's intent, that too may be inferred, and 'is manifested by the circumstances connected with the offense . . .' (Pen. Code, § 21). This is so because intent is inherently difficult to prove by direct evidence. Therefore, the act itself, together with its surrounding circumstances must generally form the basis from which the intent of the actor may legitimately be inferred." (See also *People* v. *Collins,* 172 Cal.App.2d 295, 299 [342 P.2d 370]; *People* v. *Lyles,* 156 Cal.App.2d 482, 486 [319 P.2d 745].)

 Insofar as the defendant Rackemann is concerned, one further contention must be considered. When the case was called for the purpose of the preliminary hearing, both defendants joined in a motion which was stated as follows: "Your Honor, at this time . . . we make a motion to exclude witnesses." The court thereupon directed all those who had been "subpoenaed" as witnesses to leave the courtroom. When Jess Klein was called as a witness, counsel for one of the defendants stated: "Your Honor, I am going to make a motion that this witness not be allowed to testify on the ground that the Court admonished that all the witnesses leave the room. . . ." The witness was permitted to give his testimony which, as is clear from the résumé thereof heretofore stated, contained nothing of probative value. The counsel who had made the objection thereupon stated: "I will withdraw my objection."

While the defendant Rackemann attempts to bring the case within the reasoning of *People* v. *Elliot,* 54 Cal.2d 498 [6 Cal. Rptr. 753, 354 P.2d 225], and *People* v. *Prizant,* 186 Cal.App. 2d 542 [9 Cal.Rptr. 282], there is no merit in his position. As said in *People* v. *Guy,* 191 Cal.App.2d 714 [13 Cal.Rptr. 17], at pages 717-718: "The defendant contends that it was

reversible error for the magistrate not to have excluded the investigating officer and the mother from the preliminary hearing. He relies upon *People* v. *Elliot,* 54 Cal.2d 498 [6 Cal. Rptr. 753, 354 P.2d 225], and *People* v. *Prizant,* 186 Cal.App. 2d 542 [9 Cal.Rptr. 282], to support his position. It is clear that the cited cases stand for the proposition that where a motion is made under section 868 of the Penal Code to exclude from the hearing room all persons except those expressly named in the code section, that the request is mandatory and if a person not so designated is permitted to remain it is reversible error. . . . The defendant's argument presupposes that the motion he made at the preliminary hearing was under section 868 for the exclusion of all persons not expressly authorized by that section. Examination of the record, however, reveals that the defendant did not indicate that the motion he made was based upon section 868, nor did he use the language of the section that ' [t]he magistrate . . . exclude . . . *every person* . . .' except those enumerated. (Emphasis added.) Rather, the defendant asked 'that *any witnesses* be removed from the courtroom.' (Emphasis added.) Clearly, then, the motion was for the exclusion of 'witnesses who have not been examined' under section 867 of the Penal Code. The contrast between the two sections is clear. While section 868 is mandatory, section 867 'gives the magistrate discretion to exclude and/or separate witnesses.' (*People* v. *Elliot, supra,* at p. 504.) There was no abuse of discretion in the magistrate's failure to exclude the investigating officer because the defendant has not shown that he was prejudiced in any way by the officer's presence. (*People* v. *White,* 100 Cal.App.2d 836, 838 [224 P.2d 868] ; *People* v. *Lariscy,* 14 Cal.2d 30, 32 [92 P.2d 638].) '' It is the rule that the violation by a witness of an order excluding witnesses from the courtroom does not make such witness incompetent or furnish a basis for a refusal to permit him to testify. (*People* v. *Russell,* 34 Cal.App.2d 665, 671 [94 P.2d 400].) There is no sound ground for a claim of prejudice in the present case.

With respect to defendant Gentemann, the order is affirmed. With respect to defendant Rackemann, the order is affirmed as to count II and reversed as to count I of the information.

Shinn, P. J., and Files, J., concurred.

A petition for a rehearing was denied April 16, 1962, and appellant's petition for a hearing by the Supreme Court was denied May 16, 1962.