[No. 10,492.—Department No. 2.]

## PEOPLE *v.* JOSE MARIA ALVISO AND PACHECO ALVISO.

MURDER—INDICTMENT.—An indictment for murder, which charged that defendants " did feloniously, and unlawfully, and of their malice aforethought, kill and murder J. R., contrary," etc., *held* to be good.

ID.— SEPARATE TRIAL — DISCRETION OF THE COURT.— The defendants in open court waived a separate trial, but afterward, before the jury was sworn, moved for a separate trial. *Held*, that it was in the discretion of the Court to refuse the application.

ID.—PRACTICE — BILL OF PARTICULARS.— The defendant is not entitled to a bill of particulars of the evidence relied upon to sustain the indictment.

ID.— WITNESS — EVIDENCE.— A woman, who is living with the defendant as his wife, but not married to him, is a competent witness against him.

ID.—EVIDENCE.— Upon the trial of an indictment for murder, upon the question as to whether the place of the killing was within five hundred yards of the boundary-line of the county of the indictment, the estimate of a witness who had been upon the ground, but who had not actually measured the distance, was admitted. *Held*, not to be error.

ID.—CORPUS DELICTI.— It is very seldom that a conviction occurs without a direct proof of the *corpus delicti*, either by eye-witnesses of the homicide, or the subsequent discovery of the body ; yet there may be exceptions, as where the body has been consumed by fire, or boiled in potash, or dissolved

by acids, rendering it impossible that it should ever be produced, and in such cases the *corpus delicti* may be proved circumstantially or inferentially. *Held,* accordingly, in this case, upon the evidence stated by the Court, that the *corpus delicti* was sufficiently proved.

APPEAL from a judgment of conviction, in the Twentieth District Court, County of Monterey, and from an order denying a new trial, in the Superior Court of the same county. BELDEN, J.

The facts are stated in the opinion.

*Gregory & Shipsey,* for Appellants.

*Attorney-General,* for Respondent.

MYRICK, J. :

The defendants were indicted for the murder of John Ruhland. The indictment charges that on a day named, at the County of Monterey, the defendants "did feloniously and unlawfully, and of their malice aforethought, kill and murder one John Ruhland, contrary," etc. The defendants demurred to the indictment, on the grounds that the facts stated do not constitute a public offense ; that it does not contain a statement of the acts constituting the offense charged in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended ; and that it is not certain and direct as regards the offense charged, nor the particular circumstances of the offense. The Court overruled the demurrer, and such ruling is assigned as error ; counsel admitting that the decisions would sustain the indictment, but urging a reconsideration of the rules established. We are satisfied that the decisions are correct on principle, and that the Court below did not err in the ruling.

After the defendants had pleaded not guilty, the case was set down for trial, and the defendants in open court waived a separate trial. At the request of defendants' counsel the jury was drawn, selected, and accepted. On the following day, before the jury was sworn, defendants moved the Court for a separate trial, which motion was denied; and this is alleged as error. After defendants have expressly waived a separate trial, we see

no error in refusing their application therefor ; it was, at most, a matter of discretion, and there was no abuse of discretion, in denying the motion.

Before the commencement of the trial, the defendants moved the Court that the prosecution be ordered to furnish to the defendants a bill of particulars of the evidence relied on to support the indictment, on the ground that they were informed that the indictment was found on the testimony of one Eulario Martinez, whose name was indorsed on the indictment, who testified to the killing on a certain day, and at a certain place, and that they are informed that the prosecution may abandon the testimony of Martinez, and attempt to prove by one Juan Valdez that deceased was killed at another time, at a different place, and under different circumstances ; and that, by reason of such conflicting information, and of the generality of the indictment, the defendants did not know what case they were to meet. The denial of the motion by the Court is assigned as error. Our attention has not been directed to any section of the Penal Code directing a bill of particulars to be furnished to a defendant on trial upon a criminal charge, and we do not call to mind any rule of law requiring the same to be done. We see no error in the ruling.

One Rosa Smith was offered as a witness for the prosecution, and was sworn and examined, notwithstanding the objection of defendants. On being examined as to her competency as a witness, she testified : " I have three children by the defendant, Pacheco Alviso. I have been living with him as his wife about seven years. In the community where we live we have passed, and recognized each other, as husband and wife. We have not been received as husband and wife by our neighbors. We have been well received by them. In February last I lived with Pacheco Alviso as his wife, and he with me as my husband. Our neighbors have regarded us as living together without being married, but they have received us well. We have had no relations with respectable married people. We were not married by the church or by the law." The objection, that she was the wife of the defendant, Pacheco Alviso, and could not be sworn as a witness, was overruled by the Court. We see no error in this ruling. The relation of husband and wife did not exist between the witness and Pacheco.

An objection was made that the alleged killing was not in Monterey County, nor within 500 yards of the line between that county and San Benito County. That question was fully submitted to the jury, (§ 782 Pen. Code) and the verdict is conclusive, the evidence being conflicting. An objection was made to the testimony of a witness, a county surveyor, who had not actually measured the distance from the county line, but who had been upon the ground, and was asked to give his estimate of the distance. The objection was overruled by the Court. There was no error in the ruling. To hold it to be error would be to hold that no estimate of any distance, even the width of a road, or the size of a room, could be given, unless the witness had gone over the space with chain or rule.

The next point for consideration relates to the *corpus delicti*. The defendants urge that this has not been shown; that the body of deceased not having been discovered, an essential fact in any charge of murder, viz., death, has not been established. In establishing a charge of murder, two facts are essential to a conviction, viz., the death of the alleged victim, and the existence of criminal agency as the cause.

It is very seldom that a conviction occurs without positive proof of the former, either by eye-witnesses of the homicide, or the subsequent discovery of the body; and while the general rule is clearly laid down, yet the authorities concede that there may be exceptions. Thus, Wharton, in his work on Homicide, § 637, relates instances of the human body being disposed of by fire, or boiled in potash, or dissolved by acids, rendering it impossible that it should ever be produced; and concludes: "It is clear that in such cases the *corpus delicti* may be proved circumstantially or inferentially."

In the case at bar, the evidence offered by the prosecution tended to establish the following facts:

In February, 1879, John Ruhland, a German, (familiarly known as Dutch John) lived in a small cabin in the Gabilan Mountains, near the line between Monterey and San Benito Counties. He owned some 500 sheep and 300 lambs. The only occupant of the cabin with Ruhland was an old man, a Mexican, named Juan Valdez. On a day in February, about the 11th or 12th, Valdez being alone at the cabin, the defend-

ants came there about noon. After remaining a short time, they saddled their horses and rode away. In the afternoon they returned, unsaddled their horses, and told Valdez, "Friend, gather your things up and leave immediately; we are taking a bad step within the last few days." Valdez was in the act of gathering up what he had, when they said: "Stop, John is coming." Ruhland arrived at the house as if going inside, but before he arrived at the door, José Maria (defendant) stopped him, with a pistol in his hand. José told Pacheco, (the other defendant) "Go and tie him." Pacheco tried to catch him, but he did not allow himself to be caught. Then, when Pacheco retired on one side, José Maria shot him, the ball taking effect in or on one side of the eye. Ruhland staggered and fell. He rose and was going inside the house, when José Maria shot him in the back. Pacheco then went to help Valdez catch his horse, and while they were thus engaged, Valdez heard a shot from the cabin. Pacheco said to Valdez: "Be in a hurry; catch your horse; don't be afraid, we are not going to hurt you; you are too old. God will kill you; but you must n't say anything, otherwise we will kill you." Valdez caught and saddled his horse, and rode away. Ruhland has not since been seen or heard of. Not far from the cabin was a large white-oak tree that had been cut down for some time. It was lying at a picket fence. It was a tall tree, and about ten feet from the but it branched in a fork. Neither the fence nor the tree were then at all burned. The day was dark and foggy. That afternoon, toward night, two boys, passing near by in hunting for a lost saddle, observed a fire not far from the cabin, and near by saw and recognized the defendants. Pacheco at that time was living with the woman Rosa Smith. The defendants left her house before noon, telling her that they were going to a dance in Chualar Cañon, and return next morning. Pacheco told the woman that they had brought some sheep; that Dutch John gave him the sheep to take care of for him. They left the sheep up the mountains. The defendants soon. after sheared the sheep, and hauled the wool to Salinas, where they sold it through an employee, and received therefor $204.70. To some they said that they owned the sheep; to others, that they were caring for them for Ruhland. After receiving the

money, they divided it, Pacheco paying some bills of his own, and making purchases, and José Maria sending away $20, and losing $40 at cards. Pacheco was arrested in May, but was soon liberated. In a conversation with Rosa Smith, she asked him why he was arrested, and if it was true that they had found the dead body of Ruhland. He replied, that they could find nothing; that José Maria had killed him, and burned the body; that he, Pacheco, would n't help, and José Maria killed him. He was very down-hearted; said he was sick. He said that the killing and burning took place in February, at the time they said they were going to a party at Chualar Cañon; that the night of the fire he recognized the boys, Cipriano and Eulario, passing by. He said that, at the time Dutch John was killed, an old man was there, and José Maria wanted to kill him, but he, Pacheco, prevented it. Pacheco offered to sell some of the sheep, and gave away some. Search was made for Ruhland, but without avail. On examining the premises, the oak-tree was found to have been burned, also the branches, and several lengths of the picket fence, and some posts; the posts had been pulled up. Wire had been used on the fence; several pieces were found curled together where the fire had been. The ashes from the fire were not scattered, but lay in a body where the fork of the tree had been, and in the ashes were a few pieces of bones, too small to be identified as human bones. The defendants were indicted, and Pacheco arrested. Search was made for José Maria by a *posse.* They came upon him in the mountains. When he saw the men he fled. He was followed some three miles, and escaped, but was subsequently arrested.

After Pacheco was arrested, he was asked where Ruhland was when he sheared the sheep. He replied, at his house. He was asked where Ruhland was when he took the wool to Salinas and sold it. He replied, at his house; both of which statements were untrue.

The foregoing is a brief synopsis of the evidence given for the prosecution. It appears that this evidence tended to show that the defendants went to Ruhland's house for the purpose of killing him, and appropriating his sheep to their own use; that in pursuance of that object, one of them shot him at least twice, once in the head and once in the back, either of the shots being

likely to produce death ; that Ruhland was never again seen or heard of ; that that night, a dark one, they built a large fire, and that subsequently remnants of a few bones were found in the ashes ; that the fire consumed the body of Ruhland ; that the sheep were taken possession of by the defendants, the wool sold, and the proceeds applied to their own use.

This evidence being submitted to the jury, under proper instructions, was sufficient to establish the *corpus delicti,* viz., that Ruhland had come to his death, and by criminal agency. There was no error in the instructions given by the Court, nor in refusing the instructions asked for by defendants, which were refused.

Judgment and order affirmed.

THORNTON, J., and SHARPSTEIN, J., concurred.