[Crim. No. 6041.   Second Dist., Div. Three.   Jan. 8, 1958.]

THE PEOPLE, Respondent, v. JAMES FREDERICK ABBOTT et al., Defendants; JAMES WILLIAM ARTHUR NICHOLS, Appellant.

Matthews & Hill and Edward I. Gritz for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.—James William Arthur Nichols and James Frederick Abbott were accused by information of grand theft in unlawfully taking from the person of Ardith Bell a canvas bag containing $4,528 in money on October 22, 1956. Abbott pleaded guilty and was sentenced to state prison. Nichols pleaded not guilty and the cause was submitted to the court on the transcript of the preliminary hearing. The court found defendant guilty as charged in the information. Nichols made a motion for a new trial, which was denied. Probation was likewise denied and defendant was sentenced to state prison. He appeals from the judgment and the order denying him a new trial.

The conviction of Nichols was based upon evidence of the following facts. Ardith Bell was employed as a cashier and hostess at McDonnell's Rancho, a restaurant located on San Fernando Road in the city of Glendale. Miss Bell lived with defendant in a trailer court not far from McDonnell's. One of her duties at the restaurant was to deposit its daily receipts at the bank. She testified that she was apprehensive about carrying money to the bank and that upon confiding her fears to defendant he agreed that it would be easy to take it from her. She told Nichols that she hoped nobody would get any ideas about it.

At approximately 11 a. m. on October 22, 1956, Miss Bell walked to the bank in the company of Robert Joblin, a bus boy at McDonnell's who usually accompanied her in making deposits; she was carrying about $5,000 in currency in a white canvas bag. As Joblin and Miss Bell approached the bank, a man whom neither was able subsequently to identify

or describe suddenly snatched the bag from her hand and ran around the side of the bank building to an alley behind the bank. Miss Bell screamed. Joblin chased the thief and saw him enter a car which was parked in the alley; another person he could not describe was also in the car, which began to move as the thief was entering it and before the car door closed. Joblin then shouted to the driver of a second car in the alley to stop the thieves.

Harrison Tellakson testified that as he was driving along San Fernando Road he heard a woman scream and saw a man run behind the bank with a bag in his hand. He drove into the alley to investigate and backed up in order to let a Ford sedan leave the alley. Upon hearing the bus boy shout he turned around, pursued the Ford for four or five blocks, and forced it to the curb. A man carrying a canvas bag jumped from the Ford and began to run down the street. The witness identified him as Nichols' codefendant Abbott. Tellakson followed on foot for several blocks whereupon Abbott threw the bag underneath a parked car. Tellakson retrieved the bag and took it to the bank, where it was found to contain some work clothes and $4,528 in currency. Abbot was arrested shortly thereafter and taken to the police station. He confessed to the robbery and implicated Nichols, who was arrested at the trailer court where he lived in sin with Ardith Bell. He was taken to the police station and was interrogated several times that day and the next. Miss Bell was also taken into custody on October 22nd and remained in custody until the afternoon of October 24th. On the morning of October 24th, defendant made a statement in the presence of Officer Perry and Officer Hesse, who were the investigating officers in the case. The statement was in question and answer form and it was subsequently transcribed by a police stenographer and signed by defendant. The statement amounted to a full confession of his part in the theft. In reply to the officers' questions, Nichols said that he arranged the robbery with Abbott. Miss Bell had no knowledge of their plan. After the robbery, when they were pursued by a man in another car, Nichols, who was driving, stopped and let Abbott out of the car with the canvas bag and then drove back to the trailer court.

Defendant's first contention is that the court erred in allowing his confession in evidence for the reason that it was obtained by the officers through threats and coercion. The argument is without merit.

Officer Perry testified that he questioned defendant and that defendant made a statement freely and voluntarily. Questioned on *voir dire* he testified that he told defendant that if he (defendant) told the truth in his statement, and there was no evidence to hold Miss Bell, she would be released. He stated to defendant that they suspected Miss Bell, but he denied promising him that she would be released if he made a statement. He testified that Miss Bell was released for lack of evidence.

After defendant had described in detail the manner in which he and Abbott committed the robbery he was asked the following questions and gave the following answers: "Q. Has this statement been given by you of your own free will? A. Yes. Q. Have any threats or promises been used? A. Does this include turning Pat loose? ["Pat" was a name defendant called Ardith Bell.] Q. It is up to you. Is that why you are doing it? A. Well——. Q. Because you feel your testimony will clear her? A. Yes. Q. Then you're doing this actually because she had nothing to do with it? A. Yes. Q. When this is typed up are you willing to sign it as evievidence of its truthfulness? A. Yes. Q. You can read it and make any corrections you like before you sign it." The confession was read into evidence at the preliminary hearing over the objection of defendant's counsel that it was not a free and voluntary statement.

Defendant argues that the foregoing indicates that the confession was involuntary. He also calls attention to certain testimony of Miss Bell to the effect that the officers told her that if defendant made a statement exonerating her she would be released, and she repeated these statements to defendant. She did not testify that the statements of the officers were related to the defendant at the officers' request. The testimony of Miss Bell added nothing to the circumstances under which defendant made his confession. There was no doubt, whatever, that the officers, acting upon information furnished by Abbott believed that Nichols could give a full account of the robbery, and that Nichols believed that by confessing and assuring the officers that the robbery was committed without the knowledge of Miss Bell he could probably bring about her release from custody.

██ As a rule the pressure that is used to induce a confession consists of either a threat of harm of some sort or of a promise of some benefit to the prisoner. It was said in *People* v. *Siemsen*, 153 Cal. 387, 394 [95 P. 863]: The " 'admissibility of such evidence so largely depends upon the

special circumstances connected with the confession, that it is difficult, if not impossible, to formulate a rule that will comprehend all cases. As the question is necessaily addressed, in the first instance, to the judge, and since his discretion must be controlled by all the attendant circumstances, the courts have wisely forborne to mark with absolute precision the limits of admission and exclusion.' ''

Defendant places much reliance upon the case of *People v. Mellus,* 134 Cal.App. 219, 220 [25 P.2d 237], in which it was held error to receive evidence of a confession which was not given voluntarily. He says "There was a situation presented very similar to that presented in the case at bar." In Mellus the admitted facts were that defendant was charged with stealing chickens; he denied his guilt; the officers told him that if he refused to make a statement and come "clean" they would lock up his mother and accuse her of being implicated in the thefts, and they stated that they had evidence against her. The defendant then made a confession. ■ In the present case the officers made it clear to defendant that Miss Bell would not be prosecuted if their investigation failed to disclose evidence of her guilt, but this was not a threat to prosecute her if defendant did not confess the crime nor a promise to release her if he did. The fact, alone, that the principal motive for a confession is that it will probably result in the exoneration of another person who is suspected of complicity in the offense does not render the confession involuntary.

In Mellus the court said (p. 225): "Here, there can be little question but that the sheriff threatened the defendant that he would lock his mother up, and the promise to let the mother go free if he made a confession is certainly to be implied from the testimony quoted."

■ In the present case Miss Bell was held under suspicion merely because she was living with Nichols. She certainly had not acted the part of a willing victim. The officers believed that Nichols, and he alone, could implicate her or exonerate her. In justice to her it was their duty to learn, if they could, whether her further detention was warranted and this required the interrogation of Nichols. If he felt himself under pressure to make a statement it came from the conditions he had created which placed Miss Bell under suspicion. If he made the statement willingly it was, in a legal sense, voluntary.

Nichols had a choice between making a statement that

might result in Miss Bell's release or remaining silent and leaving her under suspicion. The officers offered him no bargain nor did they threaten to prosecute Miss Bell if he refused to make a statement. The circumstances clearly indicated that Nichols made his confession in the exercise of his free will and judgment. He submitted that question upon the facts developed in the testimony of the officers. ▆ Inasmuch as the court could reasonably infer from the facts in evidence that the confession was made voluntarily, Nichols' failure to take the stand was a circumstance which lent support to that inference.

▆ The conclusion of the trial court with respect to the voluntary character of a confession will not be disturbed on appeal in the absence of a clear abuse of discretion. (*People v. Mehaffey*, 32 Cal.2d 535 [197 P.2d 12].) We are in agreement with the trial court that the confession was given voluntarily.

▆ Defendant next contends that the evidence was insufficient to support the judgment. The argument cannot be maintained. There was ample evidence, independent of the confession, to establish the corpus delicti, and that evidence, together with defendant's confession, was sufficient to prove his guilt of the offense.

The judgment and order appealed from are affirmed.

Wood (Parker), J., and Vallée, J., concurred.