[Crim. No. 7299.   Second Dist., Div. Two.   June 19, 1961.]

THE PEOPLE, Respondent, v. JOSEPH N. MICHAELS et al., Defendants; FRED MONTOYA, Appellant.

Fred Montoya, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and William E. Buckner, Deputy Attorneys General, for Respondent.

FOX, P. J.—In an information filed by the district attorney the defendants Michaels and Montoya were accused of burglary in two counts. In Count I it was alleged that defendants entered the repair shop of Superior Optical Company on or about January 9, 1960, with the intent to commit a felonious theft therein. In Count II it was charged that the defendants entered the building occupied by Steve's Ringside Inn on the same day and for the same purpose. Each defendant was charged with having suffered a prior felony conviction for which he served a term of imprisonment.

Following a jury trial, the defendants were found guilty under both counts of attempted burglary, a felony, which is a lesser and necessarily included offense in the crime of burglary. Probation was denied and defendant Montoya* was sentenced to the state penitentiary. He has appealed from the judgment and from the order denying his motion for a new trial.

Appellant went into the Ringside Inn, located in the vicinity of Venice Boulevard and Grand Avenue, in Los Angeles, at approximately 6 p.m. on January 8, 1960. He ordered a glass of beer. Michaels, the codefendant, arrived at the inn some 30 minutes to an hour later; he also ordered a beer. He joined Montoya; they conversed and watched the fights on TV. They left the bar right after the fights, about 8 o'clock. The Ringside Inn closed at approximately 11:15. Before closing, the bartender checked the restrooms and locked the premises.

The Superior Optical Company was located adjacent to the Ringside Inn. The men's restroom in the inn was alongside the women's restroom in the optical shop, separated only by the wall between the two buildings. During the early hours of the morning of January 9th, Officers Thompson and Rudin, of the Los Angeles Police Department, received radio instructions to go to the Ringside Inn. Officer Thompson went to the rear of the Superior Optical Shop. He observed defendant Michaels open the door and step out of the building. He was immediately placed under arrest by the officer. This was at approximately 2:40 a.m. The only lights in the area were the street lights. After handcuffing Michaels, Officer Thompson focused the light of his flashlight inside the open door at the rear of the optical shop. In the beam of his flashlight the officer saw appellant standing inside the shop approximately six feet from the rear door. Appellant was wearing dark clothing. He was

---

*Montoya admitted a prior conviction for burglary.

also wearing a white apron and had a screwdriver in his hand. The apron which he wore was similar to those kept on the premises of the optical shop for the use of the repairmen. The screwdriver was similar to those which were used in the repair of optical instruments. Michaels was wearing a pair of khaki trousers, which had bits of plaster in their cuffs and in the pockets. Officer Thompson examined the restroom of the Optical Company and discovered a large hole that had been ripped through the wall from the Optical Company into the adjoining restroom of the inn. There was plaster on both sides of the wall, most of it just below the hole. There were also pieces of lathing on the floor. The plaster had been ripped from a space about 3 by 4 feet; the hole itself through the wall was approximately 14 by 16 inches, and about 1½ to 2 feet from the floor. Officer Thompson was able to go through the opening between the two restrooms. Further examination of the premises revealed that the back door to the optical shop had been forced; the lock was pried off, as was a bar across the door, thus permitting the door to swing open. The upper portion of the door had been broken.

Appellant stated to Officer Thompson, in the presence of Officer Rudin, that he had been at the bar at Steve's Ringside Inn the evening before, and that he had met Michaels there for the first time. He said they had a few drinks and then left and went to a bar on Pico and Grand, and "shot" some pool. He stated that they had come back, but he did not know why they went to the rear of these premises; that the door was open and he stepped inside, found a screwdriver on the floor and picked it up. It was at that time that the officers arrived.

Later examination of the premises by the proprietors disclosed that the alarm-circuit in the inn had been broken. This was near a small window in the rear of the inn which had been broken and the screen lifted off. The vertical bars across the window were left intact. It did not appear that anything had been taken from either the optical shop or the inn.

At the trial appellant explained his and Michaels' presence at the rear of these premises by saying that he was driving Michaels, who lived in the vicinity, to his home; that during the trip it occurred to him that they could buy some beer at the inn, which was just around the corner from Michaels' residence, and that they would have another bottle at the latter's home. So appellant drove into the parking lot, onto which there was shining a light from the optical shop. Michael got out of the car to go into the inn before 2 a.m. Appellant fol-

lowed him. As appellant approached the door, Michaels was coming out, and said "This is not the entrance." Appellant inquired, "What do you mean?" The appellant walked into the shop to see whether it was the entrance. He picked up the screwdriver and was walking out when the officer arrived. Appellant saw the apron lying on the floor beside the screwdriver, but he wasn't wearing it.

In seeking a reversal, appellant contends that the judgment is not supported by the evidence in that no evidence was produced (1) connecting appellant with the damage done to the two places; and (2) showing the intent with which the appellant entered the premises of the optical shop. There is no merit in either contention.

Under section 459 of the Penal Code, burglary is committed if a person enters a store with the intent to commit theft therein. (*People* v. *Stone,* 155 Cal.App.2d 259, 267 [318 P.2d 25].) In the instant case, the jury determined that the appellant was guilty under each count of attempted burglary, a felony, a lesser and necessarily included offense.

Where a crime remains unfinished and the participant is charged with attempt, two elements are essential: (1) a direct ineffectual act done towards the commission of a crime, and (2) a specific intent to commit that crime. (*People* v. *Miller,* 2 Cal.2d 527, 530 [42 P.2d 308] ; *People* v. *Lyles,* 156 Cal.App.2d 482, 485 [319 P.2d 745].) On appeal from a conviction of attempted burglary on the ground that the evidence is insufficient to support the conviction, a reviewing court must determine whether there is substantial evidence to support an implied finding that the appellant committed some act unequivocally manifesting an intention to go forward to the completion of the crime of burglary. (*People* v. *Lyles, supra,* p. 486 [156 Cal.App.2d].)

In reviewing the record, the court must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

Applying these principles to the factual picture here presented, the jury could reasonably infer that appellant, at least in part, was responsible for the damage that had been done to the optical shop and the inn. His presence, together with that of his codefendants, inside the shop, wearing an apron similar to those used by the repairmen who worked in the shop, and holding a screw driver similar to those used by the repairmen in their work, and the presence of plaster in

the cuffs and pockets of the trousers of his codefendant, amply justify the implied finding that appellant was responsible with his codefendant Michaels for the damage to the premises.

From the evidence herein recited, the jury could also reasonably infer that appellant and Michaels entered the premises with the intent to steal. ▮ It is true that "intent is rarely susceptible of direct proof and ordinarily must be inferred from a consideration of all the facts and circumstances shown in evidence. ▮ And, it necessarily follows, that if the evidence is sufficient to justify a reasonable inference that the requisite intent existed, the finding of its presence in a particular case, may not be disturbed on appeal." (*People* v. *Lyles, supra,* p. 486 [156 Cal.App.2d].) ▮ Burglarious intent could be reasonably and justifiably inferred from the unlawful and forcible entry alone, which was unquestionably established. (*People* v. *Stewart,* 113 Cal.App.2d 687, 691 [248 P.2d 768].) Also, the inn maintained a substantial supply of beer, wine and food. The hole that had been broken through the wall separating the two establishments provided a means of stealing the inn's supplies. The jury could readily infer that appellant and Michaels intended to steal food and beverages. There is really only one conclusion that the jury could come to in this case. Obviously, the jury did not believe the appellant's story that they entered the rear door of the optical shop by mistake.

We find no merit whatever in this appeal.

The judgment and the order are affirmed.

Ashburn, J., and McMurray, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.