[Crim. No. 91.   Fifth Dist.   Mar. 12, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. CLARK B. HUBER, JR., Defendant and Appellant.

Clark B. Huber, Jr., in pro. per., and Roslyn Robbins Dienstein, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Clark B. Huber, Jr., waived a jury and after trial was found guilty by the court of burglary in the second degree; the information charges that on or about April 18, 1963, the defendant did wilfully enter the building housing a bar known as ''The Louvre'' at 113 South Washington Street, in the City of Sonora with the intent to commit theft. An experienced member of the Tuolumne County bar represented the defendant by appointment at the trial. After conviction, the court considered the probation report, denied appellant's application for probation, and sentenced him to state's prison for the term prescribed by law. The appellant filed a notice of appeal and this court appointed counsel to represent him on the appeal; his attorney filed comprehensive briefs and fully argued the case orally.

The facts developed by the evidence show that at approximately 2 a.m. on April 18, 1963, the bartender at ''The

Louvre,'' Dilli Louis Guissi, closed the bar for the night. He placed $75 in currency and $25 to $30 in coin in the cash register and put the remainder of the day's proceeds in the safe; the bills were ones, fives, tens, and twenties. In accordance with his normal procedure, he also cleared out a drawer used during the day for the cashing of checks and deposited that money in the safe; he recalls that in one bag in the safe drawer, he placed a total of $149. He estimated that there was about $300 in the establishment, but Mrs. Lyon, wife of the proprietor of the bar, thought that the total loss in the ensuing burglary was approximately $600. Following usual practice, Mr. Guissi did not completely lock the safe, but turned the combination about seven points counterclockwise so that it could be opened through a short clockwise move as the result of which the handle of the safe could be turned and the door swung open; in other words, the combination lock was not actually engaged; in addition to the money, there was also a spare key to the front door in the safe. Mr. Guissi checked the restrooms and made a casual inspection of the premises before locking up for the night, but he testified that there were places in the building in which an intruder could readily hide, and also that the back door, which was not within his view while he was tending bar, had been left unlocked during the day.

When ''The Louvre'' was opened in the morning, it was discovered that the money had been taken from the safe and cash register, presumably by someone who came from a hiding place in the building after Mr. Guissi had left, that the locked drawer had been pried open, and that the key to the front door customarily kept in the safe was also missing. The doors of the building, both front and back, were found to be locked on the morning following the burglary; this fact gave rise to an inference that the burglar had opened the front door with the spare key, locked it from the outside, and carried the key away with him. The key was never found.

Mrs. Lyon, wife of the proprietor, testified that her husband had used the safe mechanism in the manner above stated every day in the presence of customers of the bar. He would publicly latch the safe without actually locking it so that any regular customer frequenting the bar could have easily discovered that the safe really was not locked. The theory of the prosecution is that Mr. Huber, as a frequenter of the bar, learned that the safe was not really locked and that he could thus easily gain access to the money in it. Later

on the day of the burglary, the defendant bought an automobile in Sonora and paid the seller $175 for it with bills consisting of ones, fives, tens, and twenties. It was a source of surprise to Sonora peace officers that the defendant was able to produce money in this amount for he had apparently been destitute for a considerable period of time before the burglary. Mr. Huber had lived in a small shack shared by two other men, who were also in a destitute condition. This little room 7 feet by 7 feet in dimensions and containing only a cot and an electric heater, was "paid for" by the three men by cleaning periodically the adjacent pool hall for the owner. The appellant had supported himself by doing occasional odd jobs, including the repair of coin-operated amusement devices; on at least one occasion he had secured a welfare check for food and on the night of the burglary he had not had sufficient money to pay for a bowl of soup. When the police questioned him concerning his newly acquired wealth, the defendant gave several conflicting stories, none of which checked out.

The defendant was arrested several days after the burglary, first charged with driving his new automobile without a license. He was kept in jail overnight and on the following day he confessed his guilt; he told the officers that he had gone into "The Louvre" before closing time and had hidden in a small compartment above the kitchen of the establishment; after Mr. Guissi closed the bar, he left his hiding place, opened the cash register and took the money out of it, pried open the cash drawer, which proved to be empty, and then went to the safe, opened it, and got all the money that was there. He admitted also that he secured the spare key to the front door (saying that it was in the cash register rather than in the safe), and that he had used the key to lock the front door behind him when he left. At that time, he noticed a police patrol car parked diagonally across the street near another bar; he walked slowly to the corner and, upon turning it, he ran. He claimed that he had realized approximately $300 in cash from the burglary. The police officers laid the foundation for receiving evidence of the confession at the trial by testifying that it was freely and voluntarily given and that it was not induced by threats or promises of reward.

When the prosecution rested, the appellant took the stand in his own behalf and flatly denied that he had committed the offense. He also testified that the confession was obtained

by the use of threats and sought to have the inference drawn that it was involuntary. He claimed that he had gotten the money for the car purchase from a savings account in San Francisco, but there was no corroborating evidence.

Appellant, through his counsel, contends in his opening brief that the evidence was insufficient to prove the crime of burglary, that the prosecution failed to prove the corpus delicti by independent evidence prior to the reception of his confession, and that the confession should not have been received, because it was not freely given.

The assertion that the evidence is not sufficient to prove burglary is clearly mistaken. ■ Burglary is committed when a person enters a building with the intent to commit theft therein. (*People* v. *Deptula*, 58 Cal.2d 225, 228 [23 Cal.Rptr. 366, 373 P.2d 430]; *People* v. *Michaels*, 193 Cal. App.2d 194, 198 [13 Cal.Rptr. 900]; *People* v. *Beem*, 192 Cal.App.2d 207, 211 [13 Cal.Rptr. 238]; Pen. Code, §§ 459, 460, 484.) ■ Because burglary is a crime committed in secret, often in the nighttime, it usually has to be proven by circumstantial evidence. (*People* v. *Nichols*, 196 Cal.App.2d 223, 226-227 [16 Cal.Rptr. 328]; *People* v. *Navarette*, 163 Cal.App.2d 151, 153 [329 P.2d 40].) ■ The requisite proof of specific intent to commit theft or some felony at the time of entering the building is normally established inferentially by the facts and circumstances surrounding the crime. (*People* v. *Morlock*, 46 Cal.2d 141, 145 [292 P.2d 897]; *People* v. *Michaels, supra*, 193 Cal.App.2d 194, 199.) ■ Any conflicts in the evidence must be resolved in favor of the express or implied findings of the trier of fact. (*People* v. *Garcia*, 214 Cal.App.2d 681, 683 [29 Cal.Rptr. 609]; *People* v. *Beem, supra*, 192 Cal.App.2d 207.)

■ That someone took money amounting to approximately $300 from the safe and cash register during the night was clearly proven; that the burglar could have hidden in parts of the building available for the purpose after entering unseen through the back door was also shown; that a key to the front door, which was in the safe or in the cash register, was taken was also proven; and the fact that the doors were found locked in the morning leads to the inference that the burglar used the key to lock the front door by means of which he escaped. ■ All of the elements necessary to prove burglary by someone were shown; that the defendant was the person who committed the burglary was proven by his confession, corroborated by his sudden accession of

542

wealth. When a man who is dependent for a living on casual labor and public aid, who does not have enough money to meet the common necessities of life, is suddenly enriched on the day of a burglary by sufficient money to purchase an automobile for cash, he normally feels the necessity of telling questioners where that cash came from, and when he follows this urge to justify himself by telling palpably false stories as to the mode of acquisition, the trier of fact legitimately begins to suspect that he may have been the guilty party. When he finally breaks down and admits that he was the burglar and tells in detail just how he proceeded, and his account conforms with demonstrable physical facts, it is no wonder that an experienced trial judge comes to the conclusion that he was guilty beyond all reasonable doubt.

■ The corpus delicti was amply proven before the receipt of the confession. ■ The law is succinctly stated by this court in *People* v. *Westfall,* 198 Cal.App.2d 598, 601-602 [18 Cal.Rptr. 356]:

"In California any element of the corpus delicti may be established by circumstantial evidence. Indeed, the corpus delicti may be established in its entirety, that is, solely by circumstantial evidence. (*People* v. *Scott,* 176 Cal.App.2d 458 [1 Cal.Rptr. 600]; *People* v. *Amaya,* 40 Cal.2d 70, 75 [251 P.2d 324].) ■ Many California cases hold that the corpus delicti 'may be proved . . . by inferences drawn from facts shown.' (*People* v. *Hudson,* 139 Cal.App. 543, 544 [34 P.2d 741]; *People* v. *Alviso,* 55 Cal. 230, 233.)

■ "It is equally well established that the identity of the perpetrator of the crime is never an essential element of the corpus delicti. As was said by the Supreme Court in *People* v. *Cobb,* 45 Cal.2d 158, 161 [287 P.2d 752]:

■ " 'All that need be shown by independent evidence before a confession may be introduced is that a crime has been committed by someone. [Citations.] Proof of the corpus delicti does not require proof of the identity of the perpetrators of the crime, nor proof that the crime was committed by the defendant.'

"See also *People* v. *Whitsett,* 160 Cal.App.2d 652, 657 [325 P.2d 529].

"Furthermore, the proof of the corpus delicti need not establish the crime beyond a reasonable doubt to warrant the introduction into evidence of confessions or extrajudicial statements of an accused. Prima facie proof of the corpus delicti is sufficient, as appears from the following excerpt from *People* v. *Selby,* 198 Cal. 426 [245 P. 426], at page 437:

" 'It is apparent from this review of the cases that the general trend of authority has been to hold that upon *prima facie* proof of the *corpus delicti* the extrajudicial statements, admissions, or confessions of the accused may be *admitted* in evidence and having been so properly admitted they may, with the evidence aliunde, be considered by the jury in its determination whether or not all the elements of the crime and the connection therewith of the accused have been established to a moral certainty and beyond all reasonable doubt.' (See also *People* v. *Hudson, supra,* p. 544.)'' The opinion in *People* v. *Biehler,* 215 Cal.App.2d 400, says at page 403 [30 Cal.Rptr. 199]:

" ... to authorize the reception in evidence of confessions and extrajudicial statements of a defendant '... the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish the fact of guilt; rather slight or prima facie proof is sufficient for such purpose. [Citations.] It may be proved by circumstantial evidence and by inferences reasonably drawn therefrom. [Citations.] Direct or positive evidence is not essential [Citations], nor is it necessary at this point to connect the defendant with the perpetration of the offense [Citations].' Accord: *People* v. *Nankervis,* 183 Cal.App.2d 744, 749 [7 Cal. Rptr. 263]. Tested by these principles, there can be no doubt that the corpus delicti was sufficiently established to warrant the admission into evidence of defendant's extrajudicial statements.''

The contention that appellant's confession was not voluntary in nature cannot be sustained. ▮ The test of the voluntariness of a confession is whether or not the accused exercised "mental freedom" in confessing, or, in other words, whether the confession was an expression of free choice (*Ashcraft* v. *Tennessee,* 322 U.S. 143, 154 [64 S.Ct. 921, 926, 88 L.Ed. 1192, 1199]; *Payne* v. *Arkansas,* 356 U.S. 560 [78 S.Ct. 844, 850, 2 L.Ed.2d 975]; *People* v. *Lindsey,* 188 Cal.App.2d 471, 479 [10 Cal.Rptr. 488]; *Rogers* v. *Richmond,* 365 U.S. 534, 544 [81 S.Ct. 735, 5 L.Ed.2d 760, 768]; *People* v. *Lopez,* 60 Cal.2d 223 [32 Cal.Rptr. 424, 384 P.2d 16]).

▮ It is the trial court's duty to ascertain from the evidence whether a confession was voluntarily made. This duty was fulfilled by the trial judge. ▮ It is a cardinal rule that such determination by the judge who presided at the trial will not be disturbed on appeal in the absence of a

showing of a clear abuse of discretion. (*People* v. *Mehaffey*, 32 Cal.2d 535, 548 [197 P.2d 12]; *People* v. *Abbott*, 156 Cal.App.2d 601, 606 [319 P.2d 664].) Here there was no abuse of discretion. ██ The appellant was questioned by peace officers concerning several matters one of which was the burglary of ''The Louvre'' for approximately two hours on April 27, 1963. He was also questioned for approximately three and one-half to four hours on April 28, 1963; during this time, according to witnesses for the prosecution, the appellant personally requested to see, and was granted the opportunity of seeing, two acquaintances, Vern Connolly and Manuel Martinez, and he also telephoned a woman friend, Madeline Delacruz, by permission, and conversed with her for approximately 20 minutes. The officers denied that they threatened the appellant with physical harm or that they had threatened to throw him into a cell with either Vern Connolly or Manuel Martinez, who had previously fought with him. Although the appellant testified that they did so threaten him, the trial court had the right to determine the truth after a consideration of the conflicting evidence. A total period of six hours of questioning on two different days, under the circumstances indicated by the record, does not seem excessive or coercive.

In his reply brief, the appellant seeks to make certain additional points which are not mentioned in the opening brief. Among them is the suggestion that inasmuch as the witnesses, Dilli Louis Guissi and Mildred Lyon, admitted that they were not the first persons to enter the building on the morning after the burglary, their testimony necessarily includes hearsay and the record therefore fails to establish proof of the corpus delicti prior to the receipt of the confession. No objection was made at the trial to any evidence now characterized as hearsay. ██ It is elementary that hearsay evidence admitted without objection may be properly considered in support of a criminal charge, and that it is entitled to whatever weight the trier of fact sees fit to give it. ██ It is too late to contend on appeal that evidence of a hearsay character, which has been received without objection, constitutes error (*People* v. *Brown*, 145 Cal.App.2d 778, 782 [303 P.2d 68]; *Estate of Moore*, 143 Cal.App.2d 64, 74 [300 P.2d 110]; *People* v. *Bradford*, 130 Cal.App.2d 606, 609 [279 P.2d 561]; *People* v. *Murray*, 135 Cal.App.2d 600, 603 [287 P.2d 775]; *People* v. *Grayson*, 172 Cal.App.2d 372, 378 [341 P.2d 820]).

██ Furthermore, upon analysis, most of the testimony

which appellant's counsel characterizes as hearsay is not in fact hearsay. It covers what the witnesses themselves saw upon arriving at the bar. The fact that Mr. Guissi's brother, who swept out the premises at an early hour, arrived there before the witnesses does not render their account of what they saw objectionable as hearsay. The record does not show whether this brother of Mr. Guissi was available as a witness; and the duty of subpoenaing witnesses with respect to what took place at a given time and place rests equally upon both prosecution and defense. The record is silent as to circumstances which prevented each side from calling as a witness the first man to enter the building after the crime. No error has been shown.

Appellant's reply brief also for the first time raises the accusation that the defendant was inadequately represented by counsel upon the trial. This contention as well as the other points raised for the first time in his reply brief are actually unavailable to him under the normal rules of judicial procedure. ▮ A point cannot be properly made for the first time in an appellant's closing brief if no good reason is shown for failure to present such point before. (*Ocean Shore R. R. Co.* v. *Doelger*, 179 Cal.App.2d 222, 239 [3 Cal.Rptr. 706]; *Kahn* v. *Wilson*, 120 Cal. 643, 644 [53 P. 24]; *Monk* v. *Ehert*, 192 Cal. 186, 190 [219 P. 452]; *Cooper* v. *National Motor Bearing Co.*, 136 Cal.App.2d 229, 238 [288 P.2d 581, 51 A.L.R.2d 963]; *Faus* v. *Pacific Electric Ry. Co.*, 146 Cal. App.2d 370, 379 [303 P.2d 814]; *Duncanson-Harrelson Co.* v. *Travelers Indemnity Co.*, 209 Cal.App.2d 62, 70 [25 Cal. Rptr. 718]; *Wilson* v. *Board of Retirement*, 156 Cal.App.2d 195, 207 [319 P.2d 426].) In any event, we see no justification for the viewpoint that appointed trial counsel was in any way remiss in his duty. Able lawyers often disagree as to what elements should be urged or resisted during a trial, and there is no evidence here that would justify a conclusion that the defendant was not adequately represented.

▮ Finally, appellant contends that the denial by the trial court of his request to include in the transcript on appeal the proceedings on the preliminary examination in the justice court constitutes a denial of due process, citing, among other cases, *Hardy* v. *United States*, 375 U.S. 277 [84 S.Ct. 424, 11 L.Ed.2d 331]. After the filing of the notice of appeal, the defendant made application to the trial court for an enlargement of the record to include numerous specific documents. The court granted the request as to all items

except the transcript on the preliminary examination. Inasmuch as the record does not show that a motion to set aside the information was made, the proceedings at the preliminary examination could not be of any assistance to this court or to the defendant on this appeal. (Pen. Code, §§ 995, 996; *People* v. *Harris*, 219 Cal. 727, 729-730 [28 P.2d 906]; *People* v. *McCoy*, 181 Cal.App.2d 284, 288 [5 Cal.Rptr. 107]; *People* v. *Hollins*, 164 Cal.App.2d 191, 193-194 [330 P.2d 246].) The ruling was correct.

The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 3, 1964.