Filed 6/5/15  P. v. Barnes CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B256012 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA072011) |
| v. | |
| DALE BARNES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan M. Speer, Judge.  Affirmed with modifications.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant Dale Barnes.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant Shanique Gabrielle Payne.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Gabrielle Payne was convicted following a jury trial of 18 counts of robbery in violation of Penal Code[1] section 211, three counts of attempted robbery in violation of sections 664 and 211, one count of burglary in violation of section 459 and one count of false imprisonment in violation of section 236. The trial court sentenced Payne to a total term of 10 years eight months in state prison.

Appellant Dale Barnes was convicted following a jury trial of 17 counts of robbery in violation of section 211, three counts of attempted robbery in violation of sections 664 and 211, one count of burglary in violation of section 459, one count of false imprisonment in violation of section 236, one count of grand theft in violation of section 487, subdivision (a) and two counts of forgery in violation of 475, subdivision (c). The jury found true the allegations that Barnes had suffered three prior convictions within the meaning of section 667, subdivision (a)(1) and the Three Strikes law (sections 667, subdivisions (b) through (i) and 1170.12). The trial court sentenced Barnes to a total term of 66 years 4 months to life in state prison.

Appellants appeal from the judgment of conviction. Payne contends there is insufficient evidence to support her conviction for the three robbery convictions involving Celine Nails and the burglary conviction involving a Target store. Barnes joins Payne's contention concerning the insufficiency of the evidence for the burglary conviction. Barnes additionally contends his sentence for the two forgery convictions should have been stayed pursuant to section 654. We agree that the sentence on the forgery convictions should be stayed pursuant to section 654. We affirm the judgment of conviction in all other respects.

Facts

Between March 16 and August 19, 2012, appellants robbed the Celine Nails salon and Rose Nails salon in Burbank and the Nail Design salon and U.S. Nails salon in

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

Sherman Oaks.  They robbed Nail Design twice.  They also robbed the Sen boutique in Los Angeles.  Following the July 30, 2012, robbery at U.S. Nails, appellants and Catherine Payne (Catherine) went to a Target store in the Santa Clarita Valley.  There, Catherine used a credit card stolen from a customer during the U.S. Nails robbery.  At some point after the nail salon robberies, Barnes gave a family friend, Mary Heiss, checks made out to him with the notation "work" on them.  Heiss later learned that the checks were stolen and/or forged.  Two of the victims of the nail salon robberies identified the checks as theirs.

1.  Nail Design robbery

On March 16, 2012, Thu Nguyen was working at her salon, Nail Design, in Sherman Oaks.  Lisa Vuong was also working.  There was also a customer in the salon.  Around 3:00 p.m. or 4:00 p.m., appellants entered the store.  Nguyen asked Payne what kind of color she wanted, and asked both appellants to sit down and wait until she finished working on her current customer.

When Nguyen finished with her customer, she asked appellants to come over.  They stood up, and Barnes told Nguyen to sit down.  Barnes motioned toward his waist and said he had a gun.  He said to give the money to him.  Nguyen complied.  Lisa Vuong also gave money to Barnes.  However, Payne "took more things" than Barnes.  Nguyen believed Payne took something from the customer.

2.  Celine Nails robbery

On July 24, 2012, Van Thi Ly was working at Celine Nails, a salon owned by her husband in Burbank.  Her sister Trinh Thi Ly was also working.  Two customers were also present.  Barnes, another man and a short, heavy, African-American woman who looked like Payne entered the salon.  Barnes said that he had a gun and then showed a gun in his pants.  He told Ly to give him the money.  She did.  Barnes asked Trinh if she had any money, but she shook her head no.

3

Customer Elma Havan also saw Barnes, another man and a short, heavy, African-American woman who "kind of" looked like Payne enter the salon. Barnes put his hand in his pocket and showed a black object. He demanded money. The woman grabbed Havan's purse.

### 3. Rose Nails robbery

On July 27, 2012, Yen Vu was working at Rose Nails in Burbank. Mai Vu, Huong Vu and Dung Vu were also working there. Barnes and a woman, identified by a customer as Payne, entered the store. Barnes said that he had a gun and demanded money. Payne walked around the store, picking up things and looking in drawers.

Customer Chanel Romo was having her nails done when appellants entered. Payne took Romo's purse and another customer's purse as well. She looked through drawers. Barnes demanded money from the employee who had been doing Romo's nails. When she refused, he showed her a gun in his pants. She gave him money.

Customer Izabella Frankowski was also in the salon when appellants entered, although she could not identify them in court. Payne grabbed Frankowski's purse then went around and took purses from others.

### 4. U.S. Nails robbery

On July 30, 2012, Diep Nguyen and her sister Nhan Nguyen were working at U.S. Nails, a salon in Sherman Oaks. Appellants entered the store around 8:00 p.m. Barnes asked Nhan were the money was. He then approached Diep and asked for money. She said that she did not have any money. He pulled on something in his waistband. Diep saw something black. Barnes took her phone. Diep had no interaction with Payne and did not identify her at trial.

Customer Denise Shoemaker was in U.S. Nails when appellants entered. Barnes pulled out a gun and said, "This is a robbery . . . " Payne asked Shoemaker for her bag and Shoemaker complied. They also took money from a drawer.

4

## 5. Target store burglary

After robbing U.S. Nails, appellants went to a Target store with Catherine, Payne's mother. A surveillance camera showed them arriving at about 10:00 p.m. that same day.[2] There, Catherine purchased an XBOX console using Shoemaker's credit card. Catherine signed the receipt for the XBOX, and provided her date of birth. According to investigating officer Detective O'Shea, who viewed the surveillance video, appellants were not far away when the purchase was being made.

## 6. Nail Design robbery

In the morning of August 9, 2012, appellants returned to the Nail Design salon. Nguyen, the owner, recognized them immediately. Vuong was also working that morning. There were three customers in the store. Barnes made gestures toward his waist, as he had before. He demanded money from Nguyen. Nguyen said work had been slow and she did not have any money. Payne took the customers' purses. Barnes took money from Vuong, and also a cell phone.

Customer Erica Bessinger was waiting for her nails to dry when appellants entered the salon. Payne took Bessinger's purse, and also took purses from the two other customers. Barnes flashed a gun in his waistband.

Customer Leticia Aloi was also in the salon when appellants entered. Barnes told the employees to get the money from the back. Payne took Aloi's purse, and the purses of the other two customers. Before appellants left, Barnes showed everyone he had a gun in his pants.

---

[2]     Target only saves video for 30 days. A copy of the videos was emailed to Detective O'Shea, but at some point before the trial of this matter, the detective's email was purged and the video lost. Detective O'Shea had several still photographs which he had made of the video, some of which were admitted at trial.

## 7. Checks

On or about August 16, 2012, Barnes asked Mary Heiss, a long-time family friend, to cash at least two checks from him. The checks were made out to Barnes, and he told Heiss that they were for work he had done. He claimed he was unable to cash them because he did not have a bank account. Heiss deposited the checks and gave Barnes cash from her account. Later, Heiss received two letters from her bank telling her the checks were stolen and/or forged. The bank demanded that Heiss repay the money.

Frankowski, a victim of the July 27 Rose Nails robbery, testified that her checkbook was in her purse when it was stolen by appellants. She identified checks from that checkbook made out to "Dale Barnes" in the amounts of $340, $650, and $1,050, with the notation "for work." Aloi, a victim of the August 9 Nail Design robbery, identified a check from her stolen checkbook made out to "Dale Barnes" in the amount of $1,050, with the notation "work".

## 8. Sen boutique robbery

On August 19, 2012, appellants robbed a boutique on Melrose Avenue in Los Angeles. They took money from drawers and from the cash register, and also took a Cartier watch from the wrist of the boutique's owner, Trang Phung.

## 9. Investigation

On August 22, 2012, police began conducting surveillance on the house in Lancaster where appellants and Catherine lived. On August 25 appellants were arrested and their vehicle and residence were searched. Various items linked to the robberies were found: (1) a credit card from Erica Bessinger, who was a victim of the second Nail Design robbery; (2) a Costco card belonging to Denise Shoemaker, who was a victim of the U.S. Nails robbery; and (3) credit cards and a medical card belonging to Elma Havan, who was a victim of the Celine Nails robbery.

6

Discussion

1.  Sufficiency of the evidence – Celine Nails robbery

Payne contends there is insufficient evidence to show that she was the woman who participated in the robbery of Celine Nails.  The partial identification of Payne by the victims of the Celine Nails robbery, together with evidence of Payne's modus operandi in other robberies is sufficient evidence to support Payne's conviction for the Celine Nails robbery.

a.  Applicable law – sufficiency of the evidence

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves.  Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'  [Citations.]  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]  [¶]  The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations.  [Citation.]  '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.'  [Citation.]  We do not reweigh evidence or reevaluate a witness's credibility.  [Citation.]"  (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

b.  Applicable law – modus operandi

"'Other-crimes evidence is admissible to prove the defendant's identity as the perpetrator of another alleged offense on the basis of similarity "when the marks common to the charged and uncharged offenses, considered singly or in combination, logically

7

operate to set the charged and uncharged offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator of the uncharged offenses was the perpetrator of the charged offenses." [Citation.]' [Citation.] The inference of identity, moreover, need not depend on one or more unique or nearly unique common features; features of substantial but lesser distinctiveness may yield a distinctive combination when considered together. [Citation.]" (*People v. Miller* (1990) 50 Cal.3d 954, 987; see *People v. Ewoldt* (1994) 7 Cal.4th 380, 403 ["For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts"].)

c. Analysis

Although no one piece of evidence conclusively linked Payne to the Celine Nails robbery, the evidence as a whole reasonably justified the jury's findings.

Payne was positively identified as committing four other nail salon robberies with Barnes. These four other salons were all in the San Fernando valley and were operated by Vietnamese-American women.[3] Barnes and Payne, a short, heavy, African-American woman, entered the salons at a time when the salons had customers. Barnes demanded money, and stated or indicated that he had a gun in his waistband. Payne collected purses, cash and cell phones, primarily from the customers. In each location, appellants robbed not just the salon, but also its workers and customers.

The robbers used the same modus operandi in the Celine Nails robberies. Celine Nails was a nail salon in the San Fernando valley operated by a Vietnamese-American woman, Van Thi Ly.[4] Barnes and his female accomplice, a short, heavy, African-American woman, entered the salon at a time when the salon had customers. Barnes asked for money and said that he had a gun. He showed Ly a black object in his

---

[3] These women utilized the services of a Vietnamese-English interpreter at trial.

[4] Ly used the services of a Vietnamese-English interpreter at trial.

8

waistband. Barnes also asked employee Thrin Thi Ly for money. Customer Elma Havan started to take her wallet out of her purse, but the short, heavy, African-American woman took the whole purse.

Thus, these five robberies all have "features of substantial but lesser distinctiveness [which] yield a distinctive combination when considered together." (*People v. Miller, supra*, 50 Cal.3d at p. 987.) These features support the inference that the same woman, Payne, committed all five robberies.

Although the victims in the Celine Nail robbery did not positively identify Payne as the female robber, the victims testified that Payne "looked like" or "kind of looked like" the short, heavy, African-American woman who robbed them.[5] Taken together with the modus operandi evidence, this is more than sufficient evidence to support Payne's conviction for the Celine Nails robberies.

Payne points out that there was a second male robber at the Celine Nails salon robbery and contends his presence greatly weakens the similarity between it and the other nail salon robberies, and creates an inference that a different woman came to the Celine Nail robbery. The presence of the second man at most weakens the similarity slightly. His presence was essentially superfluous. Barnes and the female robber played the same roles in the robbery as when the second man was not present. It is highly unlikely that Payne stayed home while the second man brought a short, heavy, African-American woman with him who coincidentally looked like Payne. However, even if the jury could reasonably infer that this was the case, it would not require reversal of the verdict. (*People v. Nelson, supra,* 51 Cal.4th at p. 210 [if circumstances reasonably justify jury's findings, judgment may not be reversed simply because circumstances might also reasonably be reconciled with contrary finding].)

---

[5] Victims Ly and Havan did not identify Payne as the female robber in a pre-trial photographic line-up. At trial, Ly testified that she caught only a "glimpse" of the female robber, and was not sure if she recognized Payne in court. When asked if the female robber looked like Payne, she replied, "Yes." Havan testified that she did not see the female robber in court, but then said that Payne "kind of" looked like the robber although her hair was different.

2. Sufficiency of the evidence – Target commercial burglary

Catherine used a stolen credit card to pay for purchases at a Target store on July 30, 2012. Although Payne was with Catherine and Barnes at the store, she contends there is no evidence that she was aware that Catherine had the stolen credit card or used it at the register. Barnes joins this contention.

a. Applicable law

Burglary requires the entry of certain structures with the intent to commit larceny or any felony. (*People v. Tafoya* (2007) 42 Cal.4th 147, 170; see *People v. Michaels* (1961) 193 Cal.App.2d 194, 198 [commercial burglary is committed when a defendant enters a store with the intent to commit theft].) Intent is rarely shown by direct proof but may be inferred from facts and circumstances. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540-541.)

A person aids and abets a crime when he or she acts "with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating the commission of, the offense. [Citations.]" (*People v. Beeman* (1984) 35 Cal.3d 547, 560.) "[I]n general, neither presence at the scene of a crime nor knowledge of, but failure to prevent it, is sufficient to establish aiding and abetting its commission. [Citations.] However, '[a]mong the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' [Citation.]" (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.)

b. Analysis

Appellants stole Denise Shoemaker's purse during their July 30 robbery of U.S. Nails. Her purse contained her credit cards. The robbery occurred about 8:00 p.m. Two hours later, appellants and Catherine were at the Target store. There, Catherine purchased various items using Shoemaker's credit card, including an XBOX console.

10

Catherine signed the receipt for the XBOX, and provided her date of birth.  According to Detective O'Shea, appellants were not far away when the purchase was being made.  This evidence is more than sufficient to support an inference that appellants were aware that Catherine had the credit card and intended to use it at the Target store.

3.  Forgery and grand theft (counts 26-28)

Barnes contends that section 654 bars separate punishment for the grand theft and forgery convictions, since the forged checks were the means used to commit the theft.  He is correct.

a.  Convictions

Barnes was convicted of two counts of forgery in violation of section 475, subdivision (c).  That subdivisions provides:  "Every person who possesses any completed check, money order, traveler's check, warrant or county order, whether real or fictitious, with the intent to utter or pass or facilitate the utterance or passage of the same, in order to defraud any person, is guilty of forgery."  The information and verdict forms did not identify any victims for these crimes.  Evidence introduced at trial showed that one check belonged to Aloi and the other to Frankowski.  Both showed Barnes as the payee.

Barnes was also convicted of one count of grand theft in violation of section 487, subdivision (a), which applies to thefts of more than $950.  The victim of this theft was identified in the information as Mary Heiss.  Barnes committed the theft by giving Heiss the two forged checks in exchange for cash.

b.  Section 654

Section 654, subdivision (a) provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or

11

omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Generally, section 654 applies when there is a course of conduct which violates more than one statute, but constitutes an indivisible course of conduct. "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of Penal Code section 654 depends on the intent and objective of the actor." (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; see also *People v. Britt* (2004) 32 Cal.App.4th 944, 952.) In some instances, if a defendant's acts are "temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one . . . " section 654 may not apply. (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289.)

The applicability of section 654 is a question of fact for the trial court, which is vested with "broad latitude" in making its determination. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1377–1378.) We review the trial court's determination for substantial evidence. We do so in a light most favorable to the respondent, and we presume the existence of every fact that reasonably could be deduced from the evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

c. Sentencing hearing

During argument at the sentencing hearing, the discussion of sentencing on counts 26 through 28 began with a discussion of consecutive versus concurrent sentencing. The court asked the prosecutor, "[W]hat's your position? I'm running these terms . . . consecutive, counts [26], [27] and [28]. This is the grand theft for Mary Heiss, victim, and then the two forgeries, they are checks from the same victim but they were passed on two different occasions?" The prosecutor replied that the checks were from two different victims, and so the court "has the authority to run [all three counts] consecutive. And the reason would be is they were two separate victims and it was for a different incident." After further discussions about the number and names of the forgery victims, the court said, "[The checks] were both passed on August 16th, but they were passed on different

occasions on the same date but a different time." The prosecutor replied in part, "All I'm saying, Your Honor, if the court wants to run them concurrent, it can. . . ." The court pointed out that defense counsel was "not asking for me to run them concurrent, she's asking me to deem them 654." The prosecutor replied, "For the same reason – for the same argument, Your Honor, I think they're not 654." The court said, "I don't think they are either."

In actually imposing sentence, the court stated: "The court finds the following crimes were committed on separate or on the same victim, but not on the same occasion and did not arise from the same set of operative facts: Counts . . . XXVI [grand theft] , XXVII [forgery], and XXVIII [forgery]."

### d. Analysis

Respondent contends that substantial evidence supports the trial court's finding that Barnes had separate intents or objectives in committing grand theft and forging checks. Respondent is mistaken in two respects. The trial did not make any finding that Barnes had separate intents or objectives, and there would be no evidence to support such a finding.

As summarized above, most of the discussion of these counts at the sentencing hearing involved consecutive versus concurrent sentencing. Barnes was being sentenced under the Three Strikes law, which requires consecutive sentences for offenses "not committed on the same occasion, and not arising from the same set of operative facts . . . ." (§§ 667, subd. (c)(6), 1170.12, subd. (a)(6).)

At the end of the sentencing hearing, the prosecutor argued that section 654 was not applicable for the reasons discussed in connection with the consecutive sentencing discussion, and the court agreed. However, the "phrase 'same occasion' in subdivision (a)(6) and (7) [does not] parallel either the language of section 654, which refers to an 'act or omission,' or the language of cases interpreting section 654, which refer to an indivisible course of conduct and the defendant's intent and objective. [Citations.]" (*People v. Deloza* (1998) 18 Cal.4th 585, 594.) "[T]he analysis for determining if

subdivision (a)(6) and (7) requires consecutive sentencing is not coextensive with the analysis for determining if section 654 permits multiple punishment." (*Id*. at p. 595.) There was no reference in the discussion to appellant's intent or objectives, and thus it appears the trial court's analysis of section 654 analysis was incomplete.[6]

It is well established that section 654 generally bars punishing a defendant for both using a worthless check to commit a theft and for the theft itself. (See *People v. Caruth* (1965) 237 Cal.App.2d 401, 405; *People v. Rosenberg* (1963) 212 Cal.App.2d 773, 777; *People v. Martin* (1962) 208 Cal.App.2d 867, 877.) Although this case involves a forged check rather than a worthless one, logic dictates that this same rule be applied in this case, barring unusual facts, of which we see none.

Respondent sees evidence of separate intents or objectives in the mere fact that Barnes possessed forged checks and *then* presented them to Heiss in exchange for cash. We do not. An intent to use the forged check to defraud a person is an element of section 475, subdivision (c), and Barnes in fact used the forged checks to defraud Heiss. Further, Barnes noted, or had an accomplice note, on the checks that they were for "work." Heiss testified that Barnes "has worked for me before, so I . . . took [the check]." Thus, it appears Barnes forged, or had an accomplice forge, the two checks for the purpose of presenting them to Heiss.

To the extent the prosecutor and the trial court were relying on the number of victims to show an exception to section 654, such reliance would be misplaced since Heiss appears to have been the only victim.[7] However, even assuming there were three

---

[6]     Although the trial court found that the checks were given to Heiss at different times on the same day for purposes of the "different occasion" requirement of the Three Strikes law, the court made no finding that Barnes had an opportunity to reflect between the two incidents as would be needed for an exception to section 654. Since there is no evidence whatsoever about the length or circumstances of any time difference, there would be no evidence to support a finding that Barnes had an opportunity to reflect.

[7]     The prosecutor argued there were three victims: Aloi and Frankowski for the forgery offenses and Heiss for the grand theft offense. It is not clear that there were any victims on the forgery convictions, since no victims were named in the information and

14

victims, "the multiple victim exception to section 654 only applies to crimes of violence against persons, not crimes against property." (*People v. Kurtenbach, supra,* (2012) 204 Cal.App.4th at p. 1290; see *People v. Correa* (2012) 54 Cal.4th 331, 341 ["section 654 does not apply to crimes of violence against multiple victims"].) The forgeries and thefts were not crimes of violence.

Since the evidence shows that possession of the forged checks and the grand theft were part of one indivisible course of conduct, and there is no evidence that Barnes had separate intents or objectives in possessing the forged checks, sentence on the forgery convictions must be stayed pursuant to section 654.

---

there is no evidence of any harm to Aloi and Frankowski from Barnes' mere possession of their checks. Further, there was no evidence that Aloi and Frankowski were harmed by the passing of the checks, for example, by incurring fees from their own banks when the forged checks were presented for payment by Heiss's credit union. Thus, the only person to have suffered any harm was Heiss.

Disposition

The consecutive 16 month terms imposed on appellant Barnes for the count 27 and 28 forgery convictions are stayed pursuant to section 654.  Barnes' sentence is accordingly reduced from 66 years four months in state prison to 63 years eight months. The clerk of the superior court is instructed to prepare an amended abstract of judgment for Barnes and to deliver a copy to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


GOODMAN, J.[*]

We concur:


MOSK, acting P.J.


KRIEGLER, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16